In re Thompkins.

[Cite as *In re Thompkins,* 115 Ohio St.3d 409, 2007-Ohio-5238.]

(No. 2006–0286—Submitted January 9, 2007—Decided October 10, 2007.)

O'Donnell, J.

{¶ 1} The Montgomery County Children Services Board appeals from a decision of the Second District Court of Appeals, which reversed the trial court order granting the board permanent custody of Shawn Thompkins.

{¶ 2} The single issue we confront concerns whether the board exercised reasonable diligence in attempting to serve Shawn's father, Iler Crawford, by certified mail, which the postal service returned marked "Attempted Not Known," or whether the board had a legal obligation to follow up with ordinary mail, as Civ.R. 4.6(D) allows for certified mail returned "Unclaimed," before service by publication would be deemed sufficient. Stated differently, did the board exercise reasonable diligence in attempting to serve Crawford even though the board did not attempt service by ordinary mail at an address from which the certified mail addressed to Crawford was returned marked "Attempted Not Known"? The answer is yes. Therefore, we reverse the judgment of the court of appeals.

I

{¶ 3} The parties do not dispute the relevant facts. A judgment entry of paternity established that appellee, Iler Crawford, is the father of the minor child, Shawn Thompkins. The appellant, Montgomery County Children Services Board, first sought permanent custody of Thompkins in October 2002. The board discovered two possible addresses for Crawford—one in Columbus and one in Dayton. Crawford's mother accepted service of process on his behalf at the Dayton address. However, because the trial court did not adjudicate the complaint for permanent custody before the 90–day period set forth in R.C. 2151.35(B)(1) expired, the board filed a new complaint for permanent custody in February 2003.

{¶ 4} The board attempted to personally serve Crawford at the Dayton address in March 2003. That attempt failed, and the process server reported that Crawford had not resided at the Dayton address for almost one year. Pursuant to Civ.R. 4.4(A)(1), the board filed an affidavit for service by publication asserting that Crawford could not be served by summons because his address was unknown to the board and could not be ascertained with reasonable diligence. Thereafter, a notice of the upcoming hearing appeared in the Daily Court Reporter, a newspaper of general circulation in Montgomery County.

{¶ 5} After publication of the notice and before the permanent-custody hearing commenced, the board attempted to serve Crawford by certified mail at the Columbus address. The postmaster returned the certified letter to the Montgomery County Juvenile Court bearing a stamp listing five possible reasons for mail to be returned: "Attempted Not Known," "Insufficient Address," "No Such Number/Street," "Not Deliverable as Addressed—Unable to Forward," and "Other." A mark appeared next to "Attempted Not Known."

{¶ 6} Counsel appointed to represent Crawford appeared at the hearing on the complaint for permanent custody and claimed that the trial court lacked personal jurisdiction over Crawford because the board had failed to perfect service upon him. The magistrate ruled that the board had properly served Crawford by publication and proceeded with the custody hearing. In July 2003, the magistrate determined that Thompkins was a dependent child and awarded permanent custody to the board. Crawford's counsel objected to the court's exercise of personal jurisdiction over Crawford. However, the trial court overruled the objection and adopted the magistrate's decision. Crawford's counsel appealed the trial court's judgment to the Second District Court of Appeals. Appellate counsel informed the court that he could not locate his client. Crawford's counsel filed an *Anders* brief, see *Anders v. California* (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, in which he noted a potential issue involving a defect in service and resultant lack of personal jurisdiction but concluded that the issue lacked merit. The appellate court determined that the service-of-process issue had sufficient merit to prevent the appeal from being wholly frivolous. Consequently, the court appointed new counsel, who filed a brief raising this assignment of error.

{¶ 7} Reviewing the merits, the court of appeals noted that when a children services board seeks to terminate parental rights, Juv.R. 16 requires the board to exercise reasonable diligence in its effort to serve the parents with process and that reasonable diligence requires attempts to serve the parents in accordance with Civ.R. 4(A), (C), and (D), 4.1, 4.2, 4.3, 4.5, and 4.6 before resorting to service by publication.

{¶ 8} The appellate court then determined that the "Attempted Not Known" notation on the certified mail envelope returned to the Montgomery County Juvenile Court was the equivalent of an envelope returned "Unclaimed." This triggered the application of Civ.R. 4.6(D), which allows a party to request service by ordinary mail. Because the board did not request service by ordinary mail, the appellate court concluded that it did not exercise due diligence in attempting to serve Crawford before resorting to service by publication. Therefore, the appellate court held that service by publication was insufficient and the trial court lacked personal jurisdiction over Crawford.

{¶ 9} We accepted the state's discretionary appeal.

{¶ 10} The right of a parent to the custody of his or her child is one of the oldest fundamental liberty interests recognized by American courts. *Troxel v. Granville* (2000), 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147 L.Ed.2d 49. See also *In re Adoption of Walters*, 112 Ohio St.3d 315, 2007-Ohio-7, 859 N.E.2d 545, ¶ 18, citing *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (the right to raise one's child is an essential and basic civil right); *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, ¶ 11, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 ("natural parents have a fundamental right to the care and custody of their children").

{¶ 11} Moreover, this court has noted that "[p]ermanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.' * * * Therefore, parents 'must be afforded every procedural and substantive protection the law allows.'" *Hayes*, 79 Ohio St.3d at 48, 679 N.E.2d 680, quoting *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45.

{¶ 12} The Due Process Clause of the Fifth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, provides: "No person shall * * * be deprived of life, liberty, or property, without due process of law." But "[f]or all its consequence, 'due process' has never been, and perhaps can never be, precisely defined. * * * Rather, the phrase expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." *Lassiter v. Dept. of Social Servs. of Durham Cty., North Carolina* (1981), 452 U.S. 18, 24–25, 101 S.Ct. 2153, 68 L.Ed.2d 640.

{¶ 13} Our courts have long recognized that due process requires both notice and an opportunity to be heard. See, e.g., *Hagar v. Reclamation Dist. No. 108* (1884), 111 U.S. 701, 708, 4 S.Ct. 663, 28 L.Ed. 569; *Caldwell v. Carthage* (1892), 49 Ohio St. 334, 348, 31 N.E. 602. In *Mullane v. Cent. Hanover Bank & Trust*

*Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, the United States Supreme Court enunciated the standard for determining whether service of process comports with due process, holding: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 314, 70 S.Ct. 652, 94 L.Ed. 865.

{¶ 14} In accordance with this requirement, the government must *attempt* to provide actual notice to interested parties if it seeks to deprive them of a protected liberty or property interest. *Dusenbery v. United States* (2002), 534 U.S. 161, 170, 122 S.Ct. 694, 151 L.Ed.2d 597. However, due process does not require that an interested party receive *actual* notice. Id. Moreover, while "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane*, 339 U.S. at 315, 70 S.Ct. 652, 94 L.Ed. 865, due process does not require "heroic efforts" to ensure the notice's delivery, *Dusenbery*, 534 U.S. at 170, 122 S.Ct. 694, 151 L.Ed.2d 597.

{¶ 15} Here, we must determine whether the board exercised reasonable diligence in attempting to notify Crawford that his parental rights were subject to termination, so that its efforts comport with our rules for the service of process and with due process requirements. Crawford did not receive actual notice of the termination proceeding; he was not aware of the case that could, and did, terminate his constitutionally protected parental rights. Indeed, it appears that Crawford remains unaware of the lengthy proceedings conducted to preserve his parental rights, as even his own court-appointed attorneys have been unable to locate him during the pendency of this action.

{¶ 16} A number of rules and statutes govern the service of process in Ohio. Juv.R. 16(A) states that a "summons shall be served as provided in Civil Rules 4(A), (C) and (D), 4.1, 4.2, 4.3, 4.5 and 4.6." The rule further provides that "when the residence of a party is unknown and cannot be ascertained with reasonable diligence, service shall be made by publication."

{¶ 17} Civ.R. 4.6(D) provides: "If a certified or express mail envelope is returned with an endorsement showing that the envelope was unclaimed, the clerk shall forthwith notify, by mail, the attorney of record or, if there is no attorney of record, the party at whose instance process was issued. If the attorney, or serving party, after notification by the clerk, files with the clerk a written request for ordinary mail service, the clerk shall send by ordinary mail a copy of the summons and complaint or other document to be served to the defendant at the address set forth in the caption, or at the address set forth in written instructions furnished to the clerk. * * * Service shall be deemed complete when the fact of mailing is entered of record, provided that the ordinary

mail envelope is not returned by the postal authorities with an endorsement showing failure of delivery. If the ordinary mail envelope is returned undelivered, the clerk shall forthwith notify the attorney, or serving party, by mail."

{¶ 18} Further, R.C. 2151.29 states:

{¶ 19} "Service of summons, notices, and subpoenas * * * shall be made by delivering a copy to the person summoned, notified, or subpoenaed, or by leaving a copy at the person's usual place of residence. If the juvenile judge is satisfied that such service is impracticable, the juvenile judge may order service by registered or certified mail. * * *

{¶ 20} "Whenever it appears by affidavit that after reasonable effort the person to be served with summons cannot be found or the person's post-office address ascertained, * * * the clerk shall publish such summons once in a newspaper of general circulation throughout the county."

{¶ 21} Pursuant to Civ.R. 4.6(D), when service is attempted by certified mail, as it was in this case, and the certified mail "is returned with an endorsement showing that the envelope was unclaimed," the serving party must be notified, and may then request that service be attempted by ordinary mail.

{¶ 22} Here, the postal service returned the certified mail marked "Attempted Not Known." The United States Postal Service, Domestic Mail Manual, Section 507, Exhibit 1.4.1, available at http://pe.usps.gov/text/dmm300/507.htm, provides that the endorsement "Unclaimed" means that the reason for nondelivery was that the "[a]ddressee abandoned or failed to call for mail," while the endorsement "Attempted—Not Known" means "[d]elivery attempted, addressee not known at place of address."

{¶ 23} When a postal return reads "Attempted Not Known," no purpose would be served by a follow-up ordinary mail letter sent to the same address. The "Unclaimed" designation implies that the person may in fact reside or receive mail at the designated address but for whatever reason has chosen not to sign for the certified mail. In that situation, a follow-up communication by ordinary mail is reasonably calculated to provide the interested party with notice and an opportunity to be heard. Such a communication, not returned, bears a strong inference that the intended recipient received the letter. This is not so, however, with ordinary mail following the return of a certified letter with the endorsement "Attempted Not Known." The inference then is that the intended recipient does not reside or receive mail at the designated address and is not known to the residents there. A follow-up letter in these circumstances would not permit a similar inference of receipt.

{¶ 24} In this case, the board complied with the rules by attempting to personally serve Crawford at the Dayton address, by attempting to serve him by

certified mail at the Columbus address, and by publishing a notice in the Daily Court Reporter in Montgomery County. Neither Civ.R. 4.6(D) nor the Due Process Clause required the board to attempt service at the Columbus address by ordinary mail. The returned certified letter, endorsed "Attempted Not Known," clearly demonstrated that Crawford did not reside and was not known at the Columbus address. Therefore, any ordinary mail addressed to him at that address could not be reasonably calculated to give him notice and an opportunity to be heard at the permanent-custody proceeding.

{¶ 25} In considering what constitutes reasonable diligence under Civ.R. 4.4(A), this court has stated: "Black's Law Dictionary (5 Ed.1979), at 412, defines 'reasonable diligence' as '[a] fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity.' As indicated by the above definition, what constitutes reasonable diligence will depend on the facts and circumstances of each particular case." *Sizemore v. Smith* (1983), 6 Ohio St.3d 330, 332, 6 OBR 387, 453 N.E.2d 632. We declared that "[r]easonable diligence requires taking steps which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address." Id.

{¶ 26} In *Sizemore*, we recognized that steps taken in the effort to exercise reasonable diligence might include consulting a city directory, examining government records, or making inquiries of possible acquaintances of the person sought. Id. But we cautioned that "[t]hese examples do not constitute a mandatory checklist. Rather, they exemplify that reasonable diligence requires [the use of] common and readily available sources" in the search. Id.

{¶ 27} In support of its request for service by publication, the board submitted a "reasonable diligence" affidavit to the trial court on March 13, 2003. That affidavit stated that Crawford's residence was unknown to the affiant and that his last known addresses were in Columbus, where the board later attempted certified mail service, and his mother's address in Dayton.

{¶ 28} The affidavit stated that the board conducted a "diligent search" by (1) checking criminal databases including the CRIS–E Prison Locator, the Montgomery County Jail, and the Ohio Defender Database; (2) sending letters to the Columbus address, which the postal service later returned; (3) attempting to obtain residential service at the Dayton home of Crawford's mother, which had been successful in the prior case; and (4) attempting to contact family members at the mother's address. The affidavit further stated that the board "knows of no other addresses for the legal father," and concluded that "[t]he residence of the legal father cannot be ascertained with reasonable diligence and service should be made by publication as provided by law."

{¶ 29} Because we determine that neither Civ.R. 4.6(D) nor the Due Process Clause requires ordinary mail service when the postal authorities return certified mail with the endorsement "Attempted Not Known" before a party attempts service by publication, and inasmuch as no party has otherwise challenged the board's averment that it exercised reasonable diligence in attempting to ascertain Crawford's address, we conclude that the board exercised reasonable diligence in attempting to serve Crawford. Accordingly, we reverse the judgment of the court of appeals.

Judgment reversed.

LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., and PFEIFER and O'CONNOR, JJ., concur in part and dissent in part.

---

**O'CONNOR, J., concurring in part and dissenting in part.**

{¶ 30} The overriding issue in this fact-intensive case is whether appellant, Montgomery County Children Services ("MCCS"), exercised "reasonable diligence" under Juv.R. 16(A) in attempting to serve appellee Iler Crawford with notice of a hearing in which his parental rights were at stake. In my view, the majority unjustifiably limits its analysis of that issue by resolving it solely within the narrow confines of a discussion of the requirements of Civ.R. 4.6(D). But this case also presents this court with an opportunity to clarify the standards that should apply to similar situations in the future. The majority fails to take advantage of the opportunity to provide sorely needed guidance on how a court should evaluate the validity of service by publication in a parental-rights case.

{¶ 31} For the reasons explained below, I dissent in part. I would vacate the judgment of the court of appeals and remand this cause to that court to apply *Sizemore v. Smith* (1983), 6 Ohio St.3d 330, 6 OBR 387, 453 N.E:2d 632, to all the relevant facts and circumstances.

I

{¶ 32} In *In re Adoption of Walters*, 112 Ohio St.3d 315, 2007-Ohio-7, 859 N.E.2d 545, ¶ 18, this court stressed that the right to raise a child is an essential and basic civil right. Furthermore, the United States Supreme Court has established that the right of a parent to the custody of his or her child is a fundamental liberty interest. *Troxel v. Granville* (2000), 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147 L.Ed.2d 49. See also *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169.

{¶ 33} Because this case implicates a parent's constitutional right to the care and custody of his child, Crawford " 'must be afforded every procedural and substantive protection the law allows.' " *In re Hayes* (1997), 79 Ohio St.3d 46, 48,

679 N.E.2d 680, quoting *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45. I readily acknowledge that Crawford has never exercised his parental rights or taken on any responsibilities with regard to Thompkins. However, although Crawford's failings as a parent were relevant to the trial court's determination whether permanent custody should be granted to MCCS, his parental deficiencies are irrelevant to the inquiry whether service of the notice of hearing to terminate his parental rights was valid. To answer that question, a reviewing court must focus only on the details of the service itself.

{¶ 34} When a dispute arises as to whether a party exercised reasonable diligence preceding resort to service by publication under Juv.R. 16(A), the burden is on that party to establish the reasonable diligence of its efforts. See *In re Miller* (1986), 33 Ohio App.3d 224, 226, 515 N.E.2d 635. Because service by publication is a method of last resort, the requirements of Juv.R. 16(A) are to be strictly enforced. See *In re Wilson* (1984), 21 Ohio App.3d 36, 40, 21 OBR 38, 486 N.E.2d 152.

{¶ 35} In perfecting service of notice on a person that a court proceeding is to take place and that the proceeding will affect the person's fundamental rights in property or family, the most reliable method of notification is to have a process server hand the notice to the person. That form of service, however, is not always possible or practical, nor is it necessarily required by rule or statute.

{¶ 36} The next best method is to personally serve the notice at the residence of the individual by leaving it with a competent adult. When these methods of "personal" and "residence" service fail, the next preferred method is to send the notice by certified mail.

{¶ 37} The return of the receipt card signed by the person or another adult at the address signifies (certifies) that the mail was received, and thus, that document suffices to show "personal" service of notice of the proceeding.

{¶ 38} If the certified letter is returned, and the reason given to the sender for its failure to be delivered indicates that the letter was unclaimed, ordinary mail service to that same address is then proper. If a letter sent by ordinary mail service is not returned to the sender as undeliverable, then service is deemed to have been made upon the person.

{¶ 39} If, however, a certified letter is returned and indicates that the addressee is unknown at that address, it makes no sense to pursue ordinary mail service there because the addressee is known not to be at the address. Civ.R. 4.6(D) does not require an exercise in futility. Instead, the Civil Rules authorize service of notice by publication in a newspaper of general circulation in the county in which the action is pending.

{¶ 40} The resort to publication service requires the filing of an affidavit that avers that the party or his counsel exercised "reasonable diligence" to ascertain the address of the person to be served. Juv.R. 16(A). See also Civ.R. 4.4(A)(1). Service by publication cannot substitute for exercising reasonable diligence in ascertaining the current address of the person. This case must be analyzed by focusing on the reasonable diligence expended by MCCS to ascertain Crawford's address.

{¶ 41} This court previously considered reasonable diligence under Civ.R. 4.4(A) in *Sizemore v. Smith,* 6 Ohio St.3d 330, 6 OBR 387, 453 N.E.2d 632.[1] There, we emphasized that "what constitutes reasonable diligence will depend on the facts and circumstances of each particular case." Id. at 332, 6 OBR 387, 453 N.E.2d 632. We further stated that "[r]easonable diligence requires taking steps which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address." Id.

{¶ 42} In *Sizemore,* we gave examples of some steps that could be undertaken in the typical exercise of reasonable diligence, but we commented, "These examples do not constitute a mandatory checklist. Rather, they exemplify that reasonable diligence requires" the use of "common and readily available sources" in the search. Id.

{¶ 43} The resolution of this case depends on whether MCCS exercised "reasonable diligence" in attempting to serve Crawford. That inquiry requires a consideration of whether MCCS used reasonable diligence in attempting to ascertain Crawford's current address, not simply whether the proper method of service was used. See id. at 331, 6 OBR 387, 453 N.E.2d 632. The court of appeals did not focus on whether MCCS exercised reasonable diligence in ascertaining Crawford's address based on a consideration of all relevant facts and circumstances as required by *Sizemore.* Instead, it limited its inquiry to whether service by ordinary mail to the Columbus address was required under Civ.R. 4.6(D). This approach unjustifiably concentrated on one small factor and abandoned the larger inquiry.

{¶ 44} It is apparent that a failed attempt at service indicated by certified mail returned marked "Attempted Not Known" is different from a failed attempt at service indicated by certified mail returned marked "unclaimed." Although Civ.R. 4.6(D) specifies the procedures to be followed when "unclaimed" certified mail is involved, it is not at all clear that those same procedures come into play when certified mail is returned marked "Attempted Not Known." In part, this is

---

1. *Sizemore* was not an appeal from a juvenile court's decision, so Juv.R. 16 was not at issue in that case. However, because Juv.R. 16(A)'s relevant provisions on service by publication parallel the pertinent provisions of Civ.R. 4.4(A) analyzed in *Sizemore,* this court's discussion of reasonable diligence in *Sizemore* is fully applicable here.

because that phrase is not used within the civil rule and is ambiguous in this situation.[2]  I therefore conclude that Civ.R. 4.6(D) did not necessarily mandate ordinary mail service in this situation, and so agree with the majority on that point.[3]

{¶ 45} This case involves the termination of parental rights, and therefore a comprehensive consideration of whether MCCS established reasonable diligence is especially appropriate here.  Because the court of appeals did not conduct such an inquiry, its judgment is incomplete.  The proper course at this point is to vacate that judgment and remand the cause to the court of appeals for a full consideration of all facts and circumstances in accordance with *Sizemore.*

## II

{¶ 46} Although there are a large number of competing concerns that I believe should be considered and addressed by the court of appeals, there are three critical facts in the record that I believe warrant special attention.

{¶ 47} First, when service regarding the first hearing, which was scheduled to occur on January 15, 2003, was attempted on Crawford at his mother's house in Dayton, his mother accepted service on his behalf on December 28, 2002.  The summons's return-of-service form bore the typewritten statement that "residential service" was made "upon _____ by leaving a copy of the summons and accompanying document(s) at his/her usual place of residence."  On the blank line within the statement, "Iler Crawford" had been printed by hand.

{¶ 48} Second, after a new complaint was filed and the case was assigned a new case number, a hearing was scheduled for April 14, 2003.  Service regarding that hearing was attempted on Crawford at the same house in Dayton in March 2003.  At the bottom of the identical return-of-service form, the process server wrote that he was unable to serve Crawford because Crawford "had not lived at [that] address *for almost a year.*"  (Emphasis added.)

---

2.  Other courts have encountered the term "attempted not known," but there does not appear to be a consensus on a specific meaning.  See, e.g., *Jefferson Cty. Treasurer v. Brown,* Jefferson Cty. App. No. 04 JE 30, 2005-Ohio-2933, 2005 WL 1385729, ¶ 30 (suggestion that "attempted not known" means an attempted delivery but the named recipient was not present); *Adams v. Commr. of Internal Revenue* (T.C.1994), 1994 WL 397318, *2 ("the notation 'Returned to Sender, Attempted, Not Known' means that the Postal Service carrier attempted delivery and was told at the point of delivery that the addressee did not live there").

3.  The attempted service by certified mail on Crawford at the Columbus address was an attempt to obtain service after the publication of notice had *already* occurred in Dayton and thus could be viewed as merely an after-the-fact attempt to cure earlier deficient efforts at service.  It is not an extremely important fact in the overall efforts to obtain service.  In focusing extensively on a possible follow-up attempt at service at the Columbus address by ordinary mail, the court of appeals placed undue emphasis on a fact that may not have any import.

{¶ 49} Third, the "reasonable diligence" affidavit filed by MCCS on March 13, 2003, which was to support the resort to service by publication, detailed that Crawford's residence was unknown and that his last known addresses were one in Columbus (the address at which certified mail service was later attempted) and his mother's address in Dayton.

{¶ 50} The affidavit also stated that MCCS checked criminal databases (CRIS–E, Prison Locator; Montgomery County Jail; Ohio Defender Database) in a "diligent search"; that letters had been sent to the Columbus address but that they had been returned; that service was "made residential" under the case number for the first hearing, "as service was accepted by" Crawford's mother; that after the complaint was refiled, service was again attempted at the mother's address but that "[t]he process server was told that the father has not lived at that address in a year"; that contact was attempted with family members at the mother's address but that no response was received; and that "MCCS knows of no other addresses for the legal father." The affidavit concluded, "The residence of the legal father cannot be ascertained with reasonable diligence and service should be made by publication as provided by law."

{¶ 51} Despite MCCS's assertion that reasonable diligence was established, an examination of the three facts noted above reveals that that fundamental assumption could be erroneous.

{¶ 52} The note on the March summons's return of service indicating that Crawford had not lived at his mother's house "for almost a year" directly contradicts the language on the December summons's return of service that indicated that his mother's address was Crawford's "usual place of residence." In addition, as clarified by the statement of the process server regarding the March service attempt, it appears that the December service attempt had not been "successful" after all. And if the December service attempt was not successful, then there would be no reason to expect success in the March service attempt.

{¶ 53} Arguably, the contradictions suggested by the service record and the reasonable-diligence affidavit should have alerted MCCS of the need to conduct a new "diligent search." The process server's notes about the lack of success in serving Crawford in Dayton established that that address was not correct. Several letters (apparently by ordinary mail) had been sent to the Columbus address and had been returned by the post office. MCCS attempted to achieve service by certified mail at the Columbus address only in an after-the-fact effort that commenced after notice by publication in Dayton had occurred. Clearly, MCCS did not believe that the Columbus address was a likely one for Crawford. And evidently, MCCS did not find Crawford in any criminal database that would have shown him to be in state custody. Thus, Crawford was at another address.

{¶ 54} It is not for this court to conduct its own consideration of the full record to determine whether MCCS acted with reasonable diligence in ascertaining Crawford's address. That is a review that should be conducted by the court of appeals. The considerations cited are solely to illustrate that the inquiry is a fact-intensive one that cannot be resolved simply by addressing one specific concern.

## III

{¶ 55} The majority opinion pays lip service to the due process concerns that are implicated in this case by recognizing that parents (even those, such as Crawford, who make no attempt to fulfill their parental responsibilities) must be afforded a high level of both procedural and substantive protections. Because service by publication is a service method of last resort that frequently fails to provide a party actual notice of impending proceedings, heightened scrutiny of that service method is especially important in parental-rights cases. But heightened scrutiny can be achieved only if clear standards are set and are applied in evaluating the validity of service on a particular person in a particular situation. Furthermore, when a reviewing court assesses a trial court's conclusion that service by publication was proper, the reviewing court should apply the same standards, and should not defer to the trial court's conclusion.

{¶ 56} I would take advantage of the opportunity presented by this case to hold that when parental rights are at stake, a reviewing court has a duty to conduct a de novo analysis of the validity of service. I would hold that this analysis should be done even when, as here, the service issues are presented to the court of appeals in a somewhat limited form and the parent has shown no interest in the child.

{¶ 57} In determining that service by publication was adequate in this case, the magistrate and trial court considered some of the factors discussed in *Sizemore*, but neither cited any rules, statutes, or case law as standards to guide their considerations. In reviewing the conclusion that service was proper, the court of appeals recognized a heightened duty to thoroughly examine the situation in light of the entire record, commenting that "parental rights are fundamental, and may not be terminated without due process."

{¶ 58} As explained above, I agree with the majority that the court of appeals incorrectly reversed the trial court's judgment on Civ.R. 4.6(D) grounds. However, because I believe that the court of appeals truncated its analysis by focusing on the specifics of Civ.R. 4.6(D) and then stopping once it determined that that rule had not been complied with, I disagree with the majority's decision to simply reverse the judgment of the court of appeals and reinstate the trial court's determination that service was proper. I would remand the cause to the court of appeals to complete its analysis.

{¶ 59} For the foregoing reasons, I would vacate the judgment of the court of appeals and remand this cause to that court for consideration whether, in light of all the relevant facts and circumstances, MCCS met its burden of establishing that it exercised "reasonable diligence" under the standards discussed in *Sizemore*.

MOYER, C.J., and PFEIFER, J., concur in the foregoing opinion.

---

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Jennifer B. Frederick, Assistant Prosecuting Attorney, for appellant.

D.K. Wehner, for appellee.