[Cite as *In re Adoption of C.P.F.*, 2014-Ohio-4479.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 101147 and 101148**

# IN RE: ADOPTION OF C.P.F. AND L.C.F.

# Minor Children

**JUDGMENT:**
AFFIRMED IN PART;
REVERSED IN PART AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Court Division
Case Nos. 2011 ADP 7645 and 2011 ADP 7644

**BEFORE:** Keough, P.J., Kilbane, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** October 9, 2014

**ATTORNEYS FOR APPELLANTS**

James Edward Kocka
1000 W. Wallings Road, Suite A
Broadview Heights, Ohio 44147

Patrick M. Farrell
600 East Granger Road, Second Floor
Brooklyn Heights, Ohio 44131

**ATTORNEYS FOR APPELLEES**

Bradley Hull
30195 Chagrin Boulevard, Suite 110-N
Pepper Pike, Ohio 44124

Pierce Leary
401 South Street, Building 4A
Chardon, Ohio 44024

**GUARDIAN AD LITEM**

Eric R. Laubacher
Laubacher & Company
20525 Center Ridge Road, Suite 626
Rocky River, Ohio 44116

KATHLEEN ANN KEOUGH, P.J.:

**{¶1}** This is an appeal from the probate court's judgment that dismissed the second petitions for adoption of minor children C.P.F. and L.C.F., filed by appellants C.F. and P.F. (collectively, the "Fs") while their appeal of the probate court's dismissal of their first petitions for adoption of the children was pending. This appeal is before the court on the accelerated docket pursuant to App.R. 11.1 and Loc. App.R. 11.1. Finding some merit to the appeal, we affirm in part, reverse in part, and remand.

## I. Background

**{¶2}** In December 2009, the biological parents of C.P.F. and L.C.F. were living in a hotel, jobless, using drugs, and unable to support their three small children. They signed a handwritten agreement with T.C. and D.C. (collectively, the "Cs"), a maternal aunt and uncle of the children's biological mother, in which they acknowledged that they were unemployed and drug addicted, and gave the Cs "temporary emergency guardianship" of C.P.F. and L.C.F.[1] The agreement provided that it would remain in effect until the four signatories agreed that it was no longer necessary.

**{¶3}** In early April 2010, after the biological father had completed 90 days of drug rehabilitation, the Cs returned the children to the biological parents. However, after learning that the parents were again using drugs, the Cs recovered the children in July 2010 through a court order. They told the parents that they would not be permitted to see the children unless they met certain conditions: they were drug free for six months, had

---

[1]Their other child went with another family member.

gainful employment, and the biological father completed anger management classes. The Cs were overwhelmed by caring full-time for C.P.F. and L.C.F., who have special needs, however, and the Fs offered to care for the children. The children began spending time with the Fs and by October 2010, were living primarily with the Fs.

{¶4} On April 15, 2011, the Cs resigned as guardians of C.P.F. and L.C.F., and the court appointed the Fs as successor guardians. In early May, the biological parents learned for the first time that C.P.F. and L.C.F. were living with the Fs and that a successor guardianship had been granted. In June 2011, the biological parents filed a motion to vacate the guardianship and for visitation; they withdrew the motion in August 2011, however, after the biological father relapsed. On October 13, 2011, the biological parents refiled their motion to terminate the guardianship and for visitation. Later that day, the Fs filed petitions for adoption of C.P.F. and L.C.F.

{¶5} The adoption proceedings were stayed pending resolution of the biological parents' motion to terminate guardianship and for visitation, and the parties subsequently entered an agreed judgment entry regarding the motions. The stay of proceeding regarding the adoption petitions was then dissolved, and the biological parents filed objections to the petitions.

{¶6} Under R.C. 3107.06, a petition to adopt a minor may only be granted if the biological parents consent to the adoption in writing. Under R.C 3107.07(A), however, the consent of the biological parent is not required if, after notice and hearing, a court

finds by clear and convincing evidence that the parent has failed without justifiable cause to communicate with the child or provide maintenance and support as required by law or judicial decree for at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the petitioner's home.

**{¶7}** In January 2013, the magistrate held a hearing on the issue of whether the biological parents' consent to the adoptions was required. Considering the period of October 13, 2010, through October 13, 2011 (the one-year period prior to the filing of the adoption petitions),[2] the magistrate found that the Fs had failed to establish by clear and convincing evidence that the biological parents failed without justifiable cause to provide more than de minimis contact with their children. Specifically, he found that the evidence showed that from December 2010 through February 2011, the biological mother made repeated telephone calls to the Cs, who admitted in their testimony that they hung up on her and did not make return calls when she left messages. D.C. admitted that the biological mother asked to see the children but he refused to allow it. The Cs admitted that they intentionally did not tell the biological mother that the children were living with the Fs. In light of this evidence, the magistrate concluded that there was justifiable cause for the biological parents' failure to maintain contact with their children.

---

[2]The children were placed with the Fs on April 15, 2011. The magistrate found that they lived with their biological parents from early April 2010 until July 12, 2010, so it was apparent that the biological parents provided contact and support for their children during the one-year period prior to their placement with the Fs.

{¶8} With respect to maintenance and support, the magistrate found there was no legal or judicial obligation for the biological parents to pay support and, even if there were, there was justifiable cause for their failure to do so based upon the conduct of the Cs and the Fs. The magistrate found that the biological parents were "affirmatively misled" by the Cs regarding the whereabouts of their children from October 2010 through April 2011, and that the Fs voluntarily undertook the care and support of the children and did not disclose this to the biological parents.

{¶9} Accordingly, although the magistrate acknowledged that the biological parents are not good parents, he recommended that the trial court issue a judgment indicating that their consent to the adoptions was required and dismissing the Fs' petition for adoption pursuant to R.C. 3107.06 based upon the biological parents' non-consent. On June 7, 2013, the Fs filed objections to the magistrate's decision. On the same day and before the trial court had ruled on their objections, they also filed second petitions for adoption of C.P.F. and L.C.F. The probate clerk assigned the second petitions the same lower court case numbers as the first petitions for adoption.

{¶10} In October 2013, the trial court entered a judgment adopting the magistrate's decision; the Fs timely appealed the trial court's judgment. *In re: Adoption of L.C.F.*, 8th Dist. Cuyahoga No. 100633, and *In re: Adoption of C.P.F.*, 8th Dist. Cuyahoga No. 100634.[3]

---

[3]This court dismissed the appeals on May 19, 2014, for lack of a final, appealable order

**{¶11}** In December 2013, the biological parents filed a motion to dismiss the Fs'

second petitions for adoption. The trial court subsequently granted the motion to

dismiss. The court ruled that

> [u]ntil the Eighth District Court of Appeals renders its decision on this trial
> court's decision of October 16, 2013, any other proceedings in the adoption
> issue are stayed as to the first petition for adoption. It is not possible for
> this court to hear any further evidence in the adoption of [L.C.F. and C.P.F.]
> during the pendency of the appeal, and in the event this court's decision is
> reversed and remanded, any subsequent hearings will be on the petition for
> adoption filed on October 3, 2011.

**{¶12}** The Fs timely appealed.

## II. Analysis

**{¶13}** In *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), the

Ohio Supreme Court set forth the general principles of res judicata: "A final judgment or

decree rendered upon the merits * * * by a court of competent jurisdiction is a complete

bar to any subsequent action on the same claim or cause of action between the parties or

those in privity with them."

**{¶14}** In their first assignment of error, the Fs contend that the trial court

erroneously relied on the doctrine of res judicata in dismissing the second petitions for

adoption. They argue that the second petitions involve separate facts and circumstances

for the trial court to consider because under R.C. 3107.07(A), the second petitions require

the court to consider whether the biological parents communicated with or provided

---

because although the trial court adopted the magistrate's decision, it failed to enter a separate
judgment stating the relief to be granted. The dismissals do not affect our analysis.

maintenance and support for the children for the 12-month period prior to June 7, 2013, when the second petitions were filed, rather than the 12-month period prior to October 13, 2011, when the first petitions were filed. Therefore, they contend, the second petitions were separate and distinct causes of action independent of the first petitions for adoption and not subject to res judicata.

{¶15} But the trial court did not grant the motion to dismiss on the basis of res judicata; the court granted the motion because it had no jurisdiction to consider the second petitions while its judgment regarding the first petitions was on appeal.

{¶16} Once an appeal has been filed, the trial court loses jurisdiction "except to take action in aid of the appeal." *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97, 378 N.E.2d 162 (1978). The trial court retains jurisdiction only over issues not inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment, such as collateral issues like contempt or appointment of a receiver. *Howard v. Catholic Social Servs. of Cuyahoga Cty., Inc.*, 70 Ohio St.3d 141, 146, 637 N.E.2d 890 (1994). Furthermore, "the determination as to the appropriateness of an appeal lies solely with the appellate court. A juvenile judge has no authority to determine the validity or merit of an appeal." *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, ¶ 9.

{¶17} In this case, the probate court lost jurisdiction to consider any issues relating to the adoption of C.P.F. and L.C.F. when the Fs filed their notice of appeal on

November 15, 2013. That appeal challenged the trial court's judgment that the biological parents' consent to adoption was necessary. Any decision by the probate court regarding the Fs' second petition for adoption would necessarily involve the same issue and, thus, would be inconsistent with this court's jurisdiction to reverse, modify, or affirm the judgment. Accordingly, the probate court lacked jurisdiction to proceed with any further adoption proceedings until this court rendered a decision on the Fs' appeal. *See, e.g.*, *In re: Adoption of A.W. & R.W.*, 9th Dist. Medina Nos. 08CA0040-M and 08CA0051-M, 2009-Ohio-1492 (probate court had no jurisdiction to conduct best interest hearing and issue final decree of adoption while biological father's appeal of judgment that his consent was not necessary was pending).

{¶18} Furthermore, the Fs' argument that the probate court should have proceeded because the second petitions involve a different look-back period and thus are a "separate, distinct, and independent" cause of action from the first petitions is without merit. In *State ex rel. Otten v. Henderson*, 129 Ohio St.3d 453, 2011-Ohio-4082, 953 N.E.2d 809, Otten, the biological father, filed a complaint in the Clermont County Juvenile Court for the allocation of parental rights regarding P.A.C. While the action to establish a parent-child relationship was pending in the Clermont County Juvenile Court, P.A.C.'s stepfather filed a petition to adopt P.A.C. in the Hamilton County Probate Court, asserting that Otten's consent was not required because he had failed without justifiable cause to provide for P.A.C.'s maintenance and support for at least one year.

Subsequently, the stepfather filed a petition to adopt P.A.C. in the Clermont County Probate Court, likewise asserting that Otten's consent to the adoption was not necessary because of his failure to provide maintenance and support to P.A.C. The Clermont County Probate Court scheduled the matter for hearing, and Otten filed an action for writs of prohibition and mandamus in the appellate court, objecting to the court's jurisdiction because the adoption proceeding initiated in the Hamilton County Probate Court was pending. The court of appeals subsequently denied Otten's objections challenging the jurisdiction of the Clermont County Probate Court over the adoption petition, finding that the petitions raised different issues.

{¶19} The Ohio Supreme Court reversed the appeals court, however, finding that the Clermont County Probate Court lacked jurisdiction to proceed. The court found the petitions involved the same parties and raised the same cause of action: the stepfather's requested adoption of P.A.C. *Id.* at ¶ 28. Further, the court found that the petitions raised the same issue: whether Otten's consent to the adoption was not required because of his failure to communicate with and support the child in the year preceding the filing of the petition. *Id.* The court stated:

> In applying the jurisdictional-priority rule in the context of proceedings involving the termination of parental rights, we are guided by the precept that "[t]he right of a parent to the custody of his or her child is one of the oldest fundamental liberty interests recognized by American courts." *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶ 10. "[T]he right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986). Therefore, parents must be

accorded every legally available protection before their parental rights are terminated. *Thompkins* at ¶ 11.

Consistent with the foregoing precedent, we have recognized "the bedrock proposition that once a court of competent jurisdiction has begun the task of deciding the long-term fate of a child, all other courts are to refrain from exercising jurisdiction over that matter." *In re Adoption of Asente*, 90 Ohio St.3d 91, 92, 2000-Ohio-32, 734 N.E.2d 1224. Until the first court with jurisdiction over the matter has relinquished jurisdiction, the second court lacks jurisdiction. The party seeking adoption must wait to file a subsequent petition. See *id.* at 104.

*Id.* at ¶ 31-32.

{¶20} We recognize that unlike *Otten*, this case does not involve the jurisdictional-priority rule, which provides that as between courts of concurrent jurisdiction, the court whose power is invoked first acquires jurisdiction, to the exclusion of all other courts, to adjudicate the whole issue and settle the rights of the parties. Nevertheless, the Fs seem to suggest that the probate court could have proceeded if the clerk had assigned the second petitions different case numbers from the first petitions, and that, in any event, it should have proceeded because the second petitions present a different cause of action from the first petitions. As *Otten* makes clear, however, the probate court lacked jurisdiction to proceed on the second petitions regardless of whether they were filed in the same lower court case or a different case or court. The second petitions presented the same cause of action — the adoption of C.P.F. and L.C.F. — as the first petitions. Moreover, they presented the same issue: whether the biological

parents' consent to the adoption was necessary. Accordingly, until the appeal was decided, the probate court had no jurisdiction to consider the second petitions.

{¶21} We find, however, that the trial court erred in dismissing the second petitions rather than staying their consideration until the appeal proceedings were completed. The Fs filed the second petitions for adoption in June 2013; they filed their appeal of the trial court's judgment regarding the first petitions on November 15, 2013. Thus, the second petitions were pending when the appeal was filed. Accordingly, although the trial court had no jurisdiction to proceed with the second petitions while the Fs' appeal regarding the first petitions was pending, the trial court's jurisdiction to consider the second petitions would resume after the appeal was completed. Accordingly, the trial court should have stayed any consideration of the second petitions pending the appeal, rather than dismissing the petitions.

{¶22} The first assignment of error is therefore sustained in part and overruled in part.

{¶23} In their second assignment of error, the Fs argue that the trial court erred in dismissing the second petitions because the biological parents did not file timely objections to the petitions as required by R.C. 3107.11(B). This argument is without merit. The probate court had no jurisdiction to consider the second petitions for adoption while the Fs' appeal regarding the first petitions was pending, regardless of whether the

biological parents filed timely objections to the second petitions. The second assignment of error is therefore overruled.

**{¶24}** Affirmed in part; reversed in part, and remanded for the trial court to issue a modified entry staying the second petitions pending appeal.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
TIM McCORMACK, J., CONCUR