[Cite as *In re C.B.*, 2014-Ohio-4618.]

STATE OF OHIO              )          IN THE COURT OF APPEALS
                          )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN          )

IN RE: C.B.                          C.A. No.      14CA010588


                                     APPEAL FROM JUDGMENT
                                     ENTERED IN THE
                                     COURT OF COMMON PLEAS
                                     COUNTY OF LORAIN, OHIO
                                     CASE No.      12 JC 27118


DECISION AND JOURNAL ENTRY

Dated: October 20, 2014


HENSAL, Presiding Judge.

{¶1}    Appellant, Michelle B. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her youngest child and placed the child in the permanent custody of Lorain County Children Services ("LCCS"). This Court affirms.

I.

{¶2}    Mother is the natural mother of four minor children. Although all four children were parties to the proceedings in the trial court, only her youngest child, C.B., is at issue in this appeal. LCCS has a long history of involvement with Mother's three older children, dating back to 2002. That history included at least one prior case and removal of those children from the home. The concerns of LCCS have always focused on violence and neglect in the home as well as ongoing drug abuse by Mother.

**{¶3}** C.B. was born May 19, 2010, and tested positive for tetrahydrocannabinol, the chemical responsible for marijuana's psychological effects. Shortly afterward, LCCS again became involved with the family on a voluntary basis. After approximately one year, LCCS filed this involuntary case, alleging that C.B. was a dependent child.

**{¶4}** C.B. was adjudicated a dependent child and placed in the temporary custody of LCCS. The primary case plan goal for Mother was to obtain a drug and alcohol assessment, follow any treatment recommendations, and submit to random drug screens. During the next year, however, Mother failed to complete a drug and alcohol assessment, obtain drug treatment, or submit to drug screening. She also failed to visit C.B. on a consistent basis or to obtain stable income or housing.

**{¶5}** LCCS eventually moved for permanent custody of C.B. Following a hearing on the motion, the trial court found that C.B. had been in the temporary custody of LCCS for at least 12 of the prior 22 months and that permanent custody was in her best interest. Therefore, it terminated parental rights and placed C.B. in the permanent custody of LCCS. Mother appeals and raises four assignments of error.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE AGENCY BECAUSE PERSONAL JURISDICTION OVER MOTHER WAS NEVER OBTAINED.

**{¶6}** Mother's first assignment of error is that she was not properly served with the permanent custody motion, nor was she given proper notice of the hearing. This Court has held that "a defect in the service of a permanent custody motion typically constitutes reversible error because it had due process implications on the parent because the parent received untimely,

insufficient, or no notice of the hearing." *In re D.T.*, 9th Dist. Summit No. 26344, 2012-Ohio-3552, ¶ 16. Consequently, although Mother purports to challenge the personal jurisdiction of the trial court, her supporting legal argument is based on due process principles.

{¶7} Mother recognizes that, although due process requires that the government "*attempt* to provide actual notice" to parents if it seeks to terminate their parental rights, due process does not require the trial court to ensure that each parent has received *actual* notice. (Emphasis in original.) *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 14. Under the "unique circumstances of this case," however, Mother argues the trial court was required to provide her with actual notice of the permanent custody hearing and motion.

{¶8} Mother has failed to persuade this Court that her due process rights were violated. Her argument is based on a mistaken understanding of the facts of this case. Despite Mother's assertion that she received only constructive notice, the record reveals that she received actual notice of the permanent custody motion and hearing through counsel and the guardian ad litem. "Actual notice" is notice "given directly to, or received personally by, a party." *Swader v. Paramount Property Mgt.*, 12th Dist. Butler No. CA2011-05-084, 2012-Ohio-1477, ¶ 24, quoting *Black's Law Dictionary* 1090 (8th Ed.2004).

{¶9} The record in this case reflects that Mother received actual notice of the permanent custody motion and hearing because her counsel communicated that information directly to her. Mother does not dispute that her trial counsel accepted service of the permanent custody motion and notice of the hearing on her behalf. *See In re D.G.*, 9th Dist. Summit No. 26213, 2012-Ohio-1818, ¶ 11. She did not appear at the permanent custody hearing but her trial counsel did. Counsel stated on the record that Mother knew about the motion and that the

hearing had been scheduled for that date because he had discussed the matter with her. The guardian ad litem also recalled talking to Mother about the motion and upcoming hearing.

{¶10} Mother does not claim that she did not receive notice of the motion or hearing, nor does she point to anything in the record to contradict counsel's statements to the court that he gave Mother actual notice of the motion and hearing. Instead, she argues that trial counsel's statement to the court was not sufficient to establish that she received service of the permanent custody motion and notice of the hearing. Given that trial counsel had ethical obligations under Rules 1.4(A)(3) and 3.3(A)(1) of the Rules of Professional Conduct to keep his client reasonably informed about the status of the proceedings and to communicate truthfully with the trial court, we will presume that he did, absent anything in the record to suggest otherwise.

{¶11} Consequently, Mother has failed to demonstrate a violation of her due process right to notice of the permanent custody motion and hearing. Mother's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN REFUSING TO GRANT A CONTINUANCE OF THE PERMANENT CUSTODY TRIAL TO GIVE MOTHER A CHANCE TO APPEAR.

{¶12} Mother's second assignment of error is that the trial court erred in failing to continue the permanent custody trial. Pursuant to Juvenile Rule 23, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Local Rule 21(A)(1) of the Court of Common Pleas of Lorain County, Juvenile Division, requires that "[r]equests for continuance of any trial before the Judge shall be filed no later than thirty (30) days prior to trial[,]" but "[t]his requirement may be waived by the Court for good cause shown."

{¶13} Mother's counsel filed no written motion for a continuance prior to the permanent custody hearing, nor did he offer any reason for failing to do so. Instead, trial counsel appeared at the hearing and, after discovering that Mother was not present, voiced an objection to the trial court proceeding with the hearing without Mother in attendance.

{¶14} The trial court's decision not to continue the hearing was within its sound discretion, requiring it to balance "any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances * * *, particularly in the reasons presented [when] the request is denied." *State v. Green*, 90 Ohio St.3d 352, 368 (2000), quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). The trial court should consider: "the length of delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors." *Id.*, quoting *State v. Landrum*, 53 Ohio St.3d 107, 115 (1990).

{¶15} Mother's counsel informed the court that, although he had spoken to Mother approximately one month earlier, he had not been able to reach her at the same phone number since that time. Mother had not contacted him or provided him with updated information about how to reach her. Because counsel had no recent communication with Mother, he could not explain the reason for her absence, nor could he inform the court when she would be available for a hearing, if the court were to grant a continuance.

{¶16} Mother's lack of involvement in trial court proceedings and agency reunification efforts was an ongoing problem throughout this case. When the trial judge asked whether Mother had a "history of not appearing at hearings," her counsel admitted that "[u]nfortunately

she does." Journal entries in the record reflect that Mother had failed to appear at several prior hearings and that she had not been working with LCCS to address the reunification requirements of the case plan.

{¶17} Consequently, Mother has failed to demonstrate that the trial court abused its discretion by failing to continue the permanent custody hearing. Her second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT'S JUDGMENT MUST BE REVERSED BECAUSE MOTHER RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

{¶18} Mother's third assignment of error is that she failed to receive effective assistance of trial counsel. "The test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent termination of parental rights." *In re C.M.*, 9th Dist. Summit Nos. 23606, 23608, & 23629, 2007–Ohio–3999, ¶ 27, citing *In re Heston*, 129 Ohio App.3d 825, 827 (1st Dist.1998). This two-part test requires a demonstration that counsel's performance fell below an objective standard of reasonable representation and that the client has suffered prejudice. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. *See also Strickland v. Washington*, 466 U.S. 668, 687 (1984). Proof of both parts of the test is necessary to establish the claim. *Bradley*, 42 Ohio St.3d at 142. In applying the test, the reviewing court should recognize that counsel is strongly presumed to have rendered adequate assistance. *Id.*

{¶19} Mother argues that her trial counsel's performance was deficient because he failed to: (1) object to her lack of notice of the permanent custody motion and hearing date, (2) raise objections to the hearsay evidence presented against her, or (3) present evidence on her behalf.

As explained already, however, Mother received notice of the permanent custody motion and hearing from her trial counsel, so counsel had no reason to assert that Mother lacked notice.

{¶20} Next, Mother argues that trial counsel failed to object to the admission of certain hearsay statements, most of which pertained to pre-adjudication facts such as where Mother was living and whether she was using drugs. C.B. had already been adjudicated a dependent child based on those facts, however, and Mother had failed to object to any of the magistrate's factual findings in the adjudicatory or dispositional decisions. *See* Juv.R. 40(D)(3)(b)(iv). Because these facts were already established in the record, Mother suffered no prejudice from the admission of hearsay testimony about the same facts.

{¶21} Finally, Mother asserts that trial counsel was ineffective for failing to present evidence in her defense. "[T]he reasonableness of trial counsel's performance must be examined in light of the limitations that [Mother's] own behavior placed on counsel's ability to represent [her]." *In re N.H.*, 9th Dist. Summit No. 24355, 2008-Ohio-6617, ¶ 28, citing *Strickland* at 691. The record demonstrates that it was Mother who hampered her own defense by failing to cooperate with her trial counsel by giving him updated contact information and/or communicating with him prior to the hearing. Mother's trial counsel explained to the court that, because he had not had an opportunity to confer with Mother about her defense, it was difficult for him to present any evidence against the agency's motion. Trial counsel should not be faulted for Mother's failure to communicate with him to assist in her own defense. *See id.*; *In re J.S.*, 9th Dist. Lorain No. 10CA009908, 2011-Ohio-985, ¶ 18.

{¶22} Moreover, Mother does not point to any evidence or facts that would have bolstered her defense against the permanent custody motion. As will be explained below, LCCS had a strong case against Mother because she failed to work on the reunification goals of the case

plan and did not even maintain consistent contact with C.B. during this case. Because Mother has failed to demonstrate that trial counsel's performance was deficient and/or that she suffered prejudice as a result, her third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT'S JUDGMENT THAT PERMANENT CUSTODY WAS IN C.B.'S BEST INTERESTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶23} Mother's final assignment of error is that the permanent custody decision was against the manifest weight of the evidence. Revised Code Section 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) one of the enumerated factors in Section 2151.414(B)(1)(a)-(e) apply, and (2) permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶24} The trial court found that the first prong of the permanent custody test had been satisfied because C.B. had been in the temporary custody of LCCS for at least 12 of the prior 22 months. Mother does not dispute that finding but instead challenges the trial court's finding that permanent custody was in C.B.'s best interest.

{¶25} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider all the relevant factors, including those enumerated in Revised Code Section 2151.414(D): the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, and the child's need for permanence in her life.

*See In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." *In re Smith*, 9th Dist. Summit No. 20711, 2002 WL 5178, *3 (Jan. 2, 2002); *see also In re Palladino*, 11th Dist. Geauga No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.

**{¶26}** Mother's interaction with C.B. during this case was limited to sporadic, supervised visitation. Although LCCS initially scheduled visits twice a week, the frequency of the visits was reduced to once a week because Mother did not attend regularly. After visits were cut back to once a week, Mother's attendance rate did not improve, so LCCS began requiring her to confirm that she would attend before C.B. was transported for each visit. During the first year of the case, despite the efforts of LCCS to increase Mother's level of participation, she attended only 40 percent of the scheduled visits with C.B.

**{¶27}** After the first year, Mother's visits with C.B. were suspended altogether because she did not attend on a consistent basis and had failed to comply with the substance abuse component of the case plan. Although Mother had some phone conversations with C.B. during this period, she had no face-to-face interaction with C.B. for seven months prior to the permanent custody hearing.

**{¶28}** Because C.B. was less than three years old at the time of the hearing, the guardian ad litem spoke on her behalf. The guardian ad litem offered her opinion that permanent custody was in C.B.'s best interest. Although she did not doubt that Mother loved C.B., the guardian was concerned that Mother lacked the ability to meet the basic needs of C.B. because she had failed to address the substance abuse component of the case plan.

{¶29} For more than half of her young life, C.B. had lived outside Mother's custody in three different temporary placements and was in need of a stable placement. Neither parent was prepared to provide her with a suitable home nor had LCCS been able to find any relatives who were willing to do so. Consequently, the trial court reasonably concluded that C.B. was in need of a legally secure permanent placement, which would only be achieved by placing her in the permanent custody of LCCS. Because the evidence on each of the best interest factors weighed in favor of permanent custody, Mother's fourth assignment of error is overruled.

### III.

{¶30} Mother's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

KATHLEEN AMERKHANIAN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and EMILY W. KIRSCH, Assistant Prosecuting Attorney, for Appellee.