[Cite as *4 Quarters, L.L.C. v. Hunter*, 2021-Ohio-3586.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

4 QUARTERS, LLC,

Plaintiff-Appellee,

v.

C. H. HUNTER, HIS UNKNOWN HEIRS,DEVISEES, SPOUSES,
EXECUTORS, ADMINISTRATORS, RELICTS, NEXT OF KIN, AND
ASSIGNS, et al.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 BE 0035**

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 19 CV 299

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Ryan M. Regel*, Yoss Law Office, LLC, P.O. Box 270, 122 North Main Street, Woodsfield, Ohio 43793, for Plaintiff-Appellee

*Atty. Nils Peter Johnson*, Johnson & Johnson, 12 West Main Street, Canfield, Ohio 44406, for Defendant-Appellant.

Dated: September 30, 2021

WAITE, J.

{¶1} Appellant C.H. Ruble appeals a November 6, 2020 Belmont County decision to deny his Civ.R. 60(B) motion. This action stems from a complaint involving the Marketable Title Act ("MTA") on which the trial court granted default judgment in favor of Appellee Four Quarters. Appellant contends that the trial court lacked personal jurisdiction because Appellee did not attempt service of the complaint by either certified or regular mail and failed to exercise reasonable due diligence in locating potential heirs to an oil and gas interest before serving the complaint by publication. Appellant also argues the court erroneously determined that no meritorious defense had been presented as to the underlying MTA claim. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} On May 6, 1922, C.H. Hunter and Edna McCleery Hunter deeded 78.9 acres of land located in York Township, Belmont County to Edward and Mary C. Carpenter. Within the deed, the Hunters reserved the following interest: "[t]here is also reserved from this conveyance one-half of all oil and gas that may ever be found in paying quantities: provided, however, that said parties of the second part have full authority to lease said land for oil or gas purposes and are entitled to all rentals that may be received for same." (9/2/20 Defendant's Reply, Exh. B.) The term "second part" refers to the

Case No. 20 BE 0035

Carpenters. Although not used in this section, the Hunters are later referred to as the parties of the "first part." In essence, the language affords the Carpenters the right to enter into an oil and gas lease and retain one-half of the royalties. If the Carpenters elected to sign such lease, the clause appears to reserve the remaining one-half interest in the royalties in favor of the Hunters.

{¶3} On August 2, 2019, Appellee obtained the surface rights to the property. On August 5, 2019, Appellee filed a complaint under the MTA seeking to extinguish the Hunter interest and reunite the surface and mineral interests. The complaint named the Hunters and any potential heirs as defendants. Appellee, unable to locate the Hunters or any possible heirs, filed a motion with the trial court requesting permission to serve the complaint by publication in accordance with Civ.R. 4.4. The court granted the motion and Appellee served the complaint by publication. No answer was filed. On October 29, 2019, the trial court granted Appellee's motion for default judgment.

{¶4} On October 11, 2019, Appellant received a letter at his residence in Florida from Long Pointe Energy LLC informing him of the Hunter interest. (7/9/20 Ruble Aff.) Appellant claims to be the sole heir to the Hunter interest, however, he has not specified his relationship to the Hunters. Appellant averred in an affidavit that he did not learn of the lawsuit initiated by Appellee until March 26, 2020 when EQT Production Company informed him of the action, that default judgment had been granted, and that the royalties had been disbursed to Appellee.

{¶5} Appellant took no official action until July 21, 2020, nine months after learning of the Hunter interest and four months after learning of the lawsuit. On that date, Appellant filed a Civ.R. 60(B) motion to vacate the October 29, 2019 judgment. In the

motion Appellant alleges he had been negotiating oil and gas leases before learning of the lawsuit. However, the Hunter interest reserved only the right to receive royalties, not the right to enter into an oil and gas lease. The Hunter interest granted the Carpenters "full authority to lease said land for oil or gas purposes" and merely reserved for the Hunters "one-half of all oil and gas that may ever be found in paying quantities." (9/2/20 Defendant's Reply, Exh. B.)

{¶6} Regardless, Appellant argued that the trial court erroneously permitted Appellee to serve notice of the complaint by publication when neither service by certified mail nor regular mail was attempted. In his reply to the motion for relief from judgment, Appellant argued that Appellee failed to search for Hunter heirs in Marshall County, West Virginia, where the deed was notarized. Thus, Appellant claims that Appellee failed to exercise reasonable due diligence before serving the complaint by publication. As to the merits of the underlying action, Appellant argued that the Hunter interest included words of inheritance, and was not limited to a life estate in the original grantors. Appellant also argued that the DMA, as the more specific statute, controls this action and not the MTA.

{¶7} On November 2, 2020, the trial court held a hearing. On November 6, 2020, the court denied Appellant's Civ.R. 60(B) motion in a detailed judgment entry. Citing this Court's decisions in recent DMA cases, the court determined that Appellee had exercised reasonable due diligence in attempting to locate the Hunter heirs by searching the Belmont County deed records, lease records, and probate records. Thus, the court found that it had personal jurisdiction over the matter. Although Appellant learned of the Hunter interest before default judgment had been granted and had learned of the default judgment almost four months before filing the instant action, the court did give Appellant

the benefit of the doubt as to the timeliness of the motion due to the COVID 19 pandemic. However, on the remaining elements of Civ.R. 60(B), the court found that Appellant failed to present any defense against extinguishment, particularly "as to the status of the root of title instrument, the ensuing greater than forty year lack of activity, and the consequent extinguishment of the Hunter Interest." (11/6/20 J.E.) The court acknowledged that Appellant need not definitively prove his case at this stage, but determined that Appellant failed to present any defense with sufficient specificity to allow the necessary review. It is from this entry that Appellant timely appeals.

<u>ASSIGNMENT OF ERROR NO. 1</u>

The Trial Court Erred by Authorizing Service by Publication in Violation of Ohio Civil Rule 4 4.

<u>ASSIGNMENT OF ERROR NO. 2</u>

The Trial Court Abused its Discretion by not Vacating a Default Judgment Unsupported by Personal Jurisdiction.

{¶8} In Appellant's first two assignments of error, his argument is two-fold: one, Appellee failed to attempt service by certified or regular mail; and two, Appellee did not use reasonable due diligence before serving notice by publication. As such, Appellant contends that the trial court lacked personal jurisdiction in the original case. Appellant also takes issue with Appellee's affidavit accompanying its motion to serve the complaint by publication. Appellant argues that the affidavit is procedurally defective and fails to establish reasonable due diligence. Further, Appellant contends that the trial court

<u>Case No. 20 BE 0035</u>

erroneously applied this Court's decisions in recent DMA cases involving the notice of intent to declare an interest abandoned to a matter involving the service of a complaint based on the MTA. See *Sharp v. Miller*, 2018-Ohio-4740, 114 N.E.3d 1285 (7th Dist.), appeal not allowed by *Sharp v. Miller*, 155 Ohio St.3d 1421, 2019-Ohio-1421, 120 N.E.3d 867; *Shilts v. Beardmore,* 7th Dist. Monroe No. 16 MO 0003, 2018-Ohio-863, appeal not allowed by *Shilts v. Beardmore,* 153 Ohio St.3d 1433, 2018-Ohio-2639, 101 N.E.3d 464.

**{¶9}** Appellee responds that the affidavit accompanying the motion to serve the complaint by publication complied with Civ.R. 4.4. Procedurally, Appellee argues that the mere reference to "Plaintiffs" does not invalidate the affidavit even though it was counsel who signed the affidavit. Appellee explains that counsel drafted the affidavit on behalf of Appellee, thus any knowledge of Appellee is imputed to counsel. In that affidavit, Appellee states that reasonable due diligence was evidenced by the following efforts: a search of C.H. Hunter and Edna McCleery Hunter in the Belmont County probate records, deed records, lease records, and official records. Appellee highlights the fact that although Appellant claims certain records exist in Marshall County, West Virginia, those records have never been produced. As to the caselaw used by the trial court, Appellee contends that *Shilts* and *Sharp* are consistent with the applicable law regarding Civ.R. 4.4, and apply here.

**{¶10}** Preliminarily, although Appellant raised the issue of defective service within a Civ.R. 60(B) motion, "a party who asserts improper service does not need to meet all the requirements of Civ.R. 60(B) because a default judgment rendered by a court without obtaining proper service over the defendant is void and the defendant is entitled to vacation of the judgment." *Corrao v. Bennett*, 8th Dist. No. 108176, 2020-Ohio-2822, 154

N.E.3d 558, ¶ 16, citing *Khatib v. Peters*, 2017-Ohio-95, 77 N.E.3d 461, ¶ 30 (8th Dist.); *Dowers v. Krause*, 1st Dist. Hamilton No. C-030644, 2004-Ohio-1487; *Partin v. Pletcher*, 4th Dist. Jackson No. 08CA5, 2008-Ohio-6749. These jurisdictional claims must be addressed prior to addressing Civ.R. 60(B) elements because if the trial court had personal jurisdiction and the court's decision to allow service by publication was proper, then default judgment was properly granted and there is no need to address the merits of the Civ.R. 60(B) claim.

{¶11} A trial court's decision as to whether service by publication was proper is reviewed for an abuse of discretion. *Am. Tax Funding, L.L.C. v. Robertson Sandusky Properties*, 7th Dist. No. 14 MA 1, 2014-Ohio-5831, 26 N.E.3d 1202, ¶ 37. Pursuant to Civ.R. 4.4(A)(1), where a residence is unknown, service can be completed by publication in a newspaper:

> [W]hen service of process is required upon a party whose residence is unknown, service shall be made by publication in actions where such service is authorized by law. Before service by publication can be made, an affidavit of the party requesting service or that party's counsel shall be filed with the court. The affidavit shall aver that service of summons cannot be made because the residence of the party to be served is unknown to the affiant, all of the efforts made on behalf of the party to ascertain the residence of the party to be served, and that the residence of the party to be served cannot be ascertained with reasonable diligence.

{¶12} The Ohio Supreme Court defined reasonable diligence as:

"A fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity." As indicated by the above definition, what constitutes reasonable diligence will depend on the facts and circumstances of each particular case.

*Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), citing Black's Law Dictionary (5 Ed.1979).

{¶13} The *Sizemore* Court went on to explain:

Reasonable diligence requires taking steps which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address. Certainly a check of the telephone book or a call to the telephone company would hold more promise than a contact of one's own client. Other probable sources for a defendant's address would include the city directory, a credit bureau, county records such as the auto title department or the board of elections, or an inquiry of former neighbors. These examples do not constitute a mandatory checklist. Rather, they exemplify that reasonable diligence requires counsel to use common and readily available sources in his search.

*Id.* at 332.

{¶14} Appellant contends that our recent decisions in *Shilts* and *Sharp* are inapplicable, as those cases address the notice requirement of the DMA, a different process. While it is true that the DMA notice requirement is procedurally different than

Case No. 20 BE 0035

that provided in Civ.R. 4.4, the latter standard as described in *Sizemore* is consistent with *Shilts* and *Sharp,* in that all three cases have held that whether a search is reasonable will depend on the facts and circumstances of each case. *Sizemore* at 332; *Shilts* at ¶ 14; *Sharp* at ¶ 17.

{¶15} As a threshold issue, Appellant takes issue with one word of Appellee's affidavit which stated that "Plaintiff" could not locate the Hunters or any heirs through the exercise of reasonable due diligence. Appellant explains that counsel, not the plaintiff, drafted and signed the affidavit. Thus, the "person" who could not locate the heirs (the plaintiff, an L.L.C.) is not the person who averred to facts within the affidavit (counsel). Appellant argues that Civ.R. 4.4 rule strictly requires the "affiant" to swear to the existence of reasonable due diligence.

{¶16} Appellant correctly states that strict compliance with Civ.R. 4.4 is mandatory as to three requirements: "The affidavit shall aver that service of summons cannot be made because the residence of the defendant is unknown to the affiant, all of the efforts made on behalf of the party to ascertain the residence of the defendant, and that the residence of the defendant cannot be ascertained with reasonable diligence." *Anstaett v. Benjamin*, 1st Dist. Hamilton No. C-010376, 2002-Ohio-7339, ¶ 11.

{¶17} Here, counsel drafted and signed the affidavit on behalf of Appellee, which is an L.L.C. While the affidavit does refer to "plaintiff" as the person who could not locate Hunter heirs, this error is not fatal. Civ.R. 4.4 recognizes that counsel performs the work on behalf of the plaintiff, thus interchanging the words "plaintiff" and "counsel" in this matter has the same effect. No caselaw can be found to suggest that a discrepancy such as the one in this matter would result in defective service.

**{¶18}** Appellant next argues that Appellee was required to attempt service of the complaint by certified or regular mail before it could serve notice by publication. We have previously held that "[i]t would be absurd to absolutely require an attempt at notice by certified mail when a reasonable search fails to reveal addresses or even the names of potential heirs who must be served." *Shilts* at ¶ 15. While *Shilts* analyzed the notice requirement of R.C. 5301.56(E)(1), the same rationale applies to Civ.R. 4.4. Thus, Appellee's failure to attempt service by certified or regular mail was not fatal here, as Appellee did not uncover a name or an address.

**{¶19}** As to the reasonableness of Appellee's search, Appellant cites to *Am. Tax Funding, L.L.C., supra.* In that case, we acknowledged "that when an affiant avows that the defendant's address is unknown and that it cannot be discovered with reasonable diligence, that averment gives rise to a rebuttable presumption that reasonable diligence was exercised." *Am. Tax Funding, L.L.C.* at ¶ 28, citing *Sizemore,* 6 Ohio St.3d at 331, 453 N.E.2d 632 (1983). We noted that "a bare allegation is not conclusive on the subject and if challenged, the plaintiff must support the fact that reasonable diligence was used." *Id.*

**{¶20}** In *Am. Tax Funding*, the plaintiff filed an affidavit stating it could not locate the defendant's address after a search of public records within the county. However, testimony from the plaintiff's employee indicated the defendant's address "was readily ascertainable by ATF through information within its own files, through the Mahoning County Auditor's Office website." *Id.* at ¶ 36. Additional testimony from an employee of the auditor's office suggested that the defendant's address would have been available if the plaintiff had called by phone. Based on these facts, the trial court determined that

Case No. 20 BE 0035

reasonable due diligence had not been exercised prior to serving the complaint by publication and vacated the default judgment. On appeal, we affirmed the trial court's decision in what was deemed a "close call" due to the discretion afforded to a trial court judge in these cases. *Id.* at ¶ 37.

**{¶21}** In the instant matter, Appellee's counsel filed an affidavit averring that a search of the Belmont County deed records, lease records, and probate records did not reveal any information on any heirs of the Hunter interest. (8/5/19 Aff.) Consequently, the affidavit concluded that any heirs of the Hunter interest could not be located through reasonable due diligence. We note that Appellee also asserted that an internet search was conducted, however, this claim arose at the motion hearing and was not included within the affidavit.

**{¶22}** In reply to the motion for relief from judgment, Appellant raised for the first time that the deed was notarized in Marshall County, West Virginia. As such, reasonable due diligence required Appellee to search the public records in that county. Appellant attached a docket sheet from Marshall County online records indicating the existence of marriage and death records for "C.H. Hunter and Edna McCleary Wall." (Appellant's Brf., p. 20.) In reviewing the docket printout, none of the documents pertaining to C.H. Hunter include an image that allows the reader to actually see the documents. The docket events appear to reflect two marriages and a death involving C.H. Hunter, some events prior to the date of the deed and some after the fact.

**{¶23}** Appellant concedes that he has no knowledge whether those documents, even if obtained by Appellee, would lead a researcher to his name, Carl Hunter Ruble, or his address in Florida. Appellant claims he is the heir of C.H. and Edna Hunter but has

not specified his relationship to those individuals.  His affidavit merely states "I am the sole living heir of C.H. Hunter and Edna McCleery Hunter."  (Civ.R. 60(B) Motion.)

**{¶24}**  While it is true that the focus of a search for heirs is not outcome derivative, as the facts do not definitely prove a relationship between the mineral interest owner and the alleged heir, Appellant must provide more than a bare assertion that some records exist in an online docket in another state.  Appellant has not shown the relevancy of the records to the issue at hand.  He seeks to overturn the trial court judgment based on the mere allegation that he is somehow related to the mineral owners, with whom he does not share a last name and he does not live in the state where the Hunters resided, nor the bordering state he asserts should have been searched.  There is nothing within the docket to demonstrate that Appellant would have been identified in any of those documents and Appellant did not produce those documents.

**{¶25}**  This case is somewhat similar to *Shilts*, where we held that there was no requirement for the appellee to do more than a search of the public records where the last name of the heirs differed from that of the interest holders and the searcher had no reason to know the heir's last name.  *Id.* at ¶ 21.  Because there is no evidence of the relationship between Appellant and the Hunters and they do not share a last name, we cannot speculate that he would have been mentioned in any West Virginia records. Hence, it does not appear Appellees' failure to search those records was unreasonable. In other words, based on the limited record presented by Appellant, any search into counties other than Belmont County would have been aimless.

**{¶26}** At the motion hearing, Appellee reiterated that a search of the Belmont County public records and also an internet search were conducted prior to filing the

motion requesting to serve the complaint by publication. None of these searches revealed Appellant's name or any information suggesting the Hunters or any heirs resided in Marshall County, West Virginia.

**{¶27}** Even so, we recently reviewed whether the failure to search Pennsylvania records for heirs to a mineral interest in a DMA action was reasonable where the deed specifically provided information that the interest owners were residents of Washington County, Pennsylvania. *Fonzi v. Miller*, 7th Dist. No. 19 MO 0011, 2020-Ohio-3739, 155 N.E.3d 986, appeal allowed, 160 Ohio St.3d 1407, 2020-Ohio-4574, 153 N.E.3d 105*; Fonzi v. Brown*, 7th Dist. Monroe No. 19 MO 0012, 2020-Ohio-3631, appeal allowed, 159 Ohio St.3d 1487, 2020-Ohio-4232, 151 N.E.3d 634.

**{¶28}** We held that specific evidence existed within the deed itself alerting a searcher that the mineral interest holder resided in Washington County at the time the deed was executed, thus it was *per se* unreasonable for the surface owner to fail to conduct a search in that county. We note that the Ohio Supreme Court is reviewing the *Fonzi* cases on this issue. Regardless, the instant case is distinguishable, as the instant deed contained no evidence or inference that the Hunters resided in Marshall County, West Virginia. The deed was merely notarized in Marshall County.

**{¶29}** There is no evidence within the record to suggest that Appellee noticed the notary location. Appellant himself did not notice it until he filed his reply to the motion for relief from judgment. We note that Marshall County, West Virginia borders Belmont County, Ohio. Specifically, York Township, the location of the property at issue, is located on the Ohio River directly on the border of the two counties. Thus, it appears not at all remarkable to have a deed notarized in a neighboring county. Without any actual

evidence that the Hunters had any more of a legal connection with Marshall County, the mere fact that they had a document notarized there, given the extremely close proximity of that county with the place of their known residence, is of no special significance.

{¶30} At best, the location the deed was notarized, without more, provides information about the person notarizing the document, not the Hunters. In other words, the location of the person who notarized a document does not reveal the location of the grantor, while in *Fonzi* the grantors' location in another state was actually provided in the deed.

{¶31} The fact that the deed was simply notarized in Marshall County does not in and of itself require a search of that county for the Hunters or their heirs. There is nothing in this record to indicate failing to search the county of the notary was unreasonable. In addition, as we stated in *Am. Tax Funding,* the trial court's determination that reasonable due diligence was performed is afforded great discretion. Here, the trial court found that Appellee exercised reasonable due diligence under these facts. There is no reason to reverse the court's determination.

{¶32} Appellant's first and second assignments of error are without merit and are overruled.

<u>ASSIGNMENT OF ERROR NO. 3</u>

The Trial Court Erred in Denying Appellant's Motion for Relief from Judgment under Civil Rule 60(B).

{¶33} Because the search in this case was reasonable, service by publication was proper and the trial court had personal jurisdiction. As such, the court's order granting

default judgment cannot be disturbed and we need not address Appellant's Civ.R. 60(B) claims. In any event, 60(B) relief is not warranted, here.

**{¶34}** As a threshold issue, "[p]rior to the enactment of G.C. 8510-1, now R.C. 5301.02, in 1925, if a reservation in a deed was to be anything other than a life estate in the grantor, the deed had to have contained words of inheritance. On the other hand, if the deed contained an exception, it left title to that part of the realty excepted in the grantor and words of inheritance were not required." (Internal citations omitted.) *Headley v. Ackerman*, 7th Dist. Monroe No. 16 MO 0010, 2017-Ohio-8030, ¶ 45, citing *Holdren v. Mann*, 7th Dist. Monroe No. 592, 1985 WL 10385, *1 (Feb. 13, 1985) (overruled on different grounds). Thus, a deed executed prior to 1925 that contains a reservation requires words of inheritance to establish an interest greater than a life estate.

**{¶35}** The deed in this case was executed in 1922. The question becomes whether the Hunter interest is a reservation or exception. This issue is not addressed by the parties, but this analysis must be conducted before we can address the parties' MTA arguments.

**{¶36}** We have previously defined the terms "exception" and "reservation":

A reservation by definition is a "creation of a new right or interest (such as an easement) by and for the grantor, in real property being granted to another." Black's Law Dictionary (8th Ed.2004) 1333. An exception is the "retention of an existing right or interest, by and for the grantor, in real property being granted to another." *Id.* at 604. * * *

"Although the terms 'excepting' and 'reserving' mean different things, the two terms are often employed 'indiscriminately.' *Ricelli v. Atkinson* (1955), 99 Ohio App. 175 [58 O.O. 305, 132 N.E.2d 123]. As a result, the terms employed, in and of themselves, do not definitively establish whether an exception or a reservation has been created. * * * Thus, 'whether the language creates a reservation or an exception depends upon the intention of the parties as evinced by a construction of the whole instrument in light of the circumstances of the case rather than upon the particular words used.' Id. at 179 [58 O.O. 305, 132 N.E.2d 123], citing *Gill v. Fletcher* (1906), 74 Ohio St. 295 [78 N.E. 433]; *Akron Cold Spring Co. v. Unknown Heirs of Ely* (1923), 18 Ohio App. 74. 'In case of doubt, it is said, the conveyance is to be construed most strongly as against the grantor, or in favor of the grantee on the theory, it seems, that the words used are to be regarded as the words of the grantor rather than of the grantee. Applying this rule, an exception or reservation in a conveyance is construed in favor of the grantee rather than of the grantor.' *Pure Oil Co. v. Kindall* (1927), 116 Ohio St. 188, 203 [156 N.E. 119], quoting 2 Tiffany, Real Property (2 Ed.Rev.1920), Section 437." *Campbell v. Johnson* (1993), 87 Ohio App.3d 543, 547.

*Am. Energy Corp. v. Datkuliak*, 174 Ohio App.3d 398, 2007-Ohio-7199, 882 N.E.2d 463, ¶ 74-75 (7th Dist.)

{¶37} Appellant appears to concede without analysis that the Hunter interest was a reservation, not an exception. If so, the Hunters created merely a life estate. It is

unclear whether or not this is accurate, as the prior deeds are not within the appellate record. Because the record is incomplete, the evidence is insufficient to determine whether the Hunter interest is a reservation or exception and we cannot reach the issue of whether words of inheritance were required.

{¶38} Even if the record was complete, Appellant's argument focuses entirely on whether the deed contains words of inheritance and does not provide any argument to defend against the MTA claim, except a one-line argument that the DMA, as the more specific statute, should control. However, the Ohio Supreme Court has recently rejected this argument. See *West v. Bode*, 162 Ohio St.3d 293, 2020-Ohio-5473, 165 N.E.3d 298, reconsideration denied, 160 Ohio St.3d 1511, 2020-Ohio-6835, 159 N.E.3d 1168.

{¶39} Appellant argues that without discovery, he cannot attack the forty-year period to prevent extinguishment. Appellant has not explained what discovery is necessary, here. Any deeds within the chain of title are public record and readily available to Appellant. He has not alleged that any document in the possession of Appellee and unavailable in the public records is relevant, here. Although Civ.R. 60(B) does not require a party to definitively prove a defense, enough information must be provided to show that a party does have a valid defense. Appellant advances no possible defense other than that documents "might" be within the chain of title that "might" provide a defense.

{¶40} Appellant also raised a limited argument copied from his Civ.R. 60(B) reply brief asserting that there is some inconsistency in the language used in the 1922 Deed and a Certificate of Title Deed, which Appellee contends is the root of title deed. Appellant speculates that these inconsistencies might be relevant but does not provide any

explanation as to how an inconsistency in the deeds provides a defense against the MTA claim.

**{¶41}** Regardless, for the reasons discussed within Appellant's first assignment of error, these arguments are moot. As such, Appellant's third assignment of error is without merit and is overruled.

## Conclusion

**{¶42}** Appellant contends that the trial court lacked jurisdiction to hear the original complaint as Appellee failed to exercise reasonable due diligence in locating potential heirs to an oil and gas interest before serving the complaint by publication. Appellant also argues that the court erroneously determined that no meritorious defense had been presented. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**