[Cite as *Patrick v. Ellman*, 2021-Ohio-4354.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|  |  |  |
|---|---|---|
| CONNIE PATRICK, TREASURER OF BROWN COUNTY, OHIO, | : | CASE NO. CA2021-04-004 |
|  | : | O P I N I O N |
| Appellee, |  | 12/13/2021 |
|  | : |  |
| - vs - | : |  |
|  | : |  |
| WANDA ELLMAN, DECEASED, et al., | : |  |
| Appellants. | : |  |

CIVIL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. 2018-0635

Zachary A. Corbin, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecuting Attorney, for appellee.

Bruce S. Wallace, for appellant.

**M. POWELL, J.**

{¶ 1}  Appellant, Julie Ellman ("Julie"), as an heir of Wanda Ellman and the executor for Wanda's Estate, appeals the decision of the Brown County Court of Common Pleas denying her motion to vacate the default judgment rendered in this tax foreclosure action initiated by appellee, Connie Patrick, Treasurer of Brown County, Ohio ("Brown County Treasurer" or "the Treasurer").

{¶ 2} This is the second appeal involving the foreclosure and sale of certain residential property owned by Wanda Ellman prior to her death. *Patrick v. Ellman*, 12th Dist. No. CA2019-07-010, 2020-Ohio-3312 (*Ellman I*). This court has previously summarized the relevant facts as follows:

> On August 18, 2015, Wanda Ellman passed away. At the time of her death, the record indicates Wanda lived at 5650 Folchi Road, Cincinnati, Hamilton County, Ohio and owned property located at 11725 Stratton Road, Hamersville, Brown County, Ohio. There is no dispute that the real estate taxes for the Hamersville property had been certified as delinquent in 2010 having an unpaid balance of $7,682.39. Because the real estate taxes remained unpaid for over eight years, including three years after Wanda's death, the Brown County Treasurer filed a tax foreclosure complaint with the trial court on August 21, 2018. The complaint named Wanda as a defendant, as well as Wanda's unknown heirs, devises, legatees, administrators, executors, spouses, successors, assigns, creditors, and guardians, if any. No estate had been opened for Wanda in Brown County, or anywhere else, at the time the Brown County Treasurer filed its complaint.

> On August 27, 2018, the Brown County Treasurer filed an affidavit and request for service of its complaint by publication. The Brown County Treasurer averred that service by publication was necessary because the names and residences of Wanda's heirs, if any, "are unknown and cannot with reasonable diligence be ascertained." The trial court granted the Brown County Treasurer's request for service by publication later that day. The Brown County Treasurer's complaint was then published in the local newspaper, the Brown County Press, on September 9, 16, and 23, 2018.

> On November 6, 2018, the Brown County Treasurer moved for default judgment against Wanda's unknown heirs. Approximately three weeks later, on November 29, 2018, the trial court issued a judgment entry and decree of foreclosure that granted default judgment to the Brown County Treasurer. As part of this entry, the trial court specifically stated that it had found "service on the Defendants is in all respects proper under the law and the Court adopts it as good service in this case."

> On December 7, 2018, [Julie and her sister, Janice, (collectively referred to as "the Ellman sisters")] opened an estate for Wanda in the Hamilton County Probate Court under Case No. 2018004863. Approximately three months later, on February

- 2 -

25, 2019, the Hamersville property was sold at a sheriff's sale for $24,000. Shortly thereafter, on March 7, 2019, the trial court issued an order confirming the sale of the Hamersville property, directed a deed for the property be prepared for the buyers, and ordered the proceeds from the sale be distributed. The proceeds were then distributed as instructed by the trial court. This included a $14,506.14 check made out to Wanda's unknown heirs.

*Id.* at ¶ 2-5.

{¶ 3} In March 2019, the Ellman sisters attempted to record a certificate of transfer for the Hamersville property issued by the Hamilton County Probate Court with the Brown County Recorder's Office. At that time, they learned that the property had been sold at a sheriff's sale.

{¶ 4} On April 12, 2019, the Ellman sisters moved the trial court to intervene and for vacation of the default judgment pursuant to Civ.R. 24 and Civ.R. 60. In support of their motion, the Ellman sisters claimed there was a lack of service of process because "no effort was made to serve notice on Julie Ellman or her sister, despite having Julie and Janice Ellman's address the entire time."

{¶ 5} On June 27, 2019, the trial court overruled the sisters' motion. Relevant here, the trial court found the Brown Country Treasurer had complied with the statutory and civil rules concerning service by publication.

{¶ 6} The Ellman sisters appealed the trial court's decision to this court. We reversed and remanded the matter for further proceedings, holding that, "[b]ecause the Ellman sisters were already a named party in the Brown County Treasurer's complaint, i.e., Wanda's 'unknown heirs,' the Ellman sisters did not need to file a Civ.R. 24 motion to intervene before they could enter an appearance and challenge the trial court's decision finding service by publication was proper." *Ellman I* at ¶ 12. Upon remand, we directed the trial court to conduct a hearing to determine whether the Brown County Treasurer exercised

- 3 -

reasonable diligence in identifying Wanda's unknown heirs and ascertaining their residences.  *Id.* at ¶ 25.

{¶ 7}   Following our remand, a hearing was held before the magistrate regarding the steps taken by the Brown County Treasurer to identify and locate Wanda's unknown heirs. At the hearing, Mary McMullen, an assistant prosecuting attorney with the Brown County Prosecutor's Office, testified on behalf of the Brown County Treasurer.  McMullen indicated that prior to filing the complaint of foreclosure, she had a title exam prepared on the Hamersville property.  The title exam revealed that Wanda was the sole owner of the property, no taxes had been paid on the property since 2009, and it was certified delinquent in 2010.

{¶ 8}   McMullen then had a "LexisNexis people search" conducted, which she described as a search used to determine a person's location, as well as their birthdate, date of death, addresses where a person resides, former addresses, and social security numbers.  McMullen uses the Lexis-Nexis service to "obtain service on folks that are not deceased [or] to provide a date of death for someone who is deceased[.]"  From the Lexis-Nexis search, McMullen discovered that Wanda had passed away in 2015.  McMullen also searched the Brown County Probate Court's records, which yielded no probate filings for Wanda.  McMullen then conducted an internet search for Wanda's obituary but was unable to locate any obituary.  McMullen further noted that no tax payment had been made on the Hamersville property in over eight years, there was no change in contact information with the Brown County Auditor's or Treasurer's offices, and the home on the Hamersville property was vacant.

{¶ 9}   McMullen also discussed her decision not to obtain a death certificate for Wanda despite knowing of the certificate's existence.  According to McMullen, Wanda's death certificate was unnecessary because such certificates are typically needed to prove

a deceased's date of death, which had already been confirmed through the Lexis-Nexis search.

{¶ 10} McMullen indicated the steps she took in this case are those she would "typically take in a search" to determine whether an individual has any known heirs and their addresses. Notwithstanding her efforts, McMullen was unable to determine whether Wanda had any heirs. As a result, she filed the complaint and requested service by publication, which was granted and perfected.

{¶ 11} On cross-examination, McMullen agreed that the individual who reported Wanda's death would be listed on her death certificate and that it is not uncommon for the reporting individual to be a relative of the deceased. McMullen further confirmed other efforts she did not undertake in attempting to ascertain the identity and whereabouts of Wanda's heirs, including checking the Brown and Hamilton County phone directories for individuals sharing the surname of Ellman or attempting service by mail.

{¶ 12} Regarding alternative methods of service, McMullen stated that although the Treasurer's office was aware of the address to which the tax bills were being sent, i.e., the Folchi Road address, as well as the Hamersville property address, she did not attempt service at those addresses. This decision was based upon the Hamersville property being unoccupied, and McMullen's uncertainty that an heir lived at the Folchi Road residence or would receive mail addressed there.

{¶ 13} After the hearing, Julie submitted a memorandum summarizing her position. On December 30, 2020, the magistrate issued a decision finding that the actions of McMullen and the Treasurer "were reasonable under the totality of the circumstances and the applicable law." The magistrate concluded the trial court had proper jurisdiction over the subject matter of the proceedings and that the "Decree of Foreclosure was indeed proper."

{¶ 14} Julie objected to the magistrate's decision, and the trial court took the matter under advisement.[1] In its decision, the trial court overruled Julie's objections relevant to the instant appeal, and found that "[u]nder the totality of the circumstances, * * * [the] actions of the Treasurer and the Assistant Prosecutor were reasonable and that due diligence was in fact exercised by them to discover and serve any heirs of Wanda[.]"

{¶ 15} Julie now appeals, raising the following assignment of error for our review:

{¶ 16} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN FINDING THAT THE ACTIONS OF THE ASSISTANT PROSECUTOR AND THE TREASURER WERE REASONABLE UNDER THE TOTALITY OF THE CIRCUMSTANCES AND THE APPLICABLE LAW.

{¶ 17} In her assignment of error, Julie argues the trial court erred in denying the motion to vacate the default judgment, and in concluding that the Treasurer exercised "reasonable diligence" in determining the identity and residence of Wanda's heirs before resorting to service by publication.

{¶ 18} Preliminarily, it is well-established that it is the substance of a motion, not the caption, that determines the nature of a motion. See *In re Adoption of Goldberg,* 12th Dist. Warren Nos. CA2001-04-026 and CA2001-05-047, 2001 Ohio App. LEXIS 4141, *4 (Sept. 17, 2001). Here, although Julie raised the issue of defective service within a Civ.R. 60(B) motion, it is evident from the motion's substance that it is a motion to vacate a void judgment. This is because a default judgment rendered by a court without obtaining proper service over the defendant is void and the defendant is entitled to vacation of the judgment. *Corrao v. Bennett,* 154 N.E.3d 558, 2020-Ohio-2822, ¶ 16 (8th Dist.).

---

1. Janice, Julie's sister and Wanda's heir, did not object to the magistrate's decision and did not appeal from the trial court's decision.

{¶ 19} A party who asserts improper service does not need to meet all the requirements of Civ.R. 60(B), as a trial court's ability to vacate a void judgment does not arise from Civ.R. 60(B), but rather, from an inherent power possessed by the courts in this state. *Ohio State Aerie Fraternal Order of Eagles v. Alsip*, 12th Dist. Butler No. CA2013-05-079, 2013-Ohio-4866, ¶ 10. An appellate court reviews the denial of a motion to vacate under an abuse-of-discretion standard. *Nix v. Richter*, 12th Dist. Butler No. CA2017-04-043, 2017-Ohio-8431, ¶ 8. An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily or unconscionably. *Bank of N.Y. Mellon v. Maxfield*, 12th Dist. Butler No. CA2016-01-004, 2016-Ohio-2990, ¶ 9.

{¶ 20} Here, the Brown County Treasurer requested service by publication upon Wanda's unknown heirs. Civ.R. 4.4(A)(1), which provides for service by publication upon a party whose residence is unknown, states in relevant part that,

> when service of process is required upon a party whose residence is unknown, service shall be made by publication in actions where such service is authorized by law. Before service by publication can be made, an affidavit of the party requesting service or that party's counsel shall be filed with the court. The affidavit shall aver that service of summons cannot be made because the residence of the party to be served is unknown to the affiant, all of the efforts made on behalf of the party to ascertain the residence of the party to be served, and that the residence of the party to be served cannot be ascertained with reasonable diligence.

{¶ 21} A sufficient averment in the affidavit for publication filed under Civ.R. 4.4(A) "gives rise to a rebuttable presumption that reasonable diligence was exercised." *Sizemore v. Smith*, 6 Ohio St.3d 330, 331 (1983). See also *Am. Tax Funding, L.L.C. v. Robertson Sandusky Properties*, 7th Dist. Mahoning No. 14 MA 1, 2014-Ohio-5831, ¶ 28. However, when "challenged" by the defendant, the plaintiff must "support the fact that he or she used reasonable diligence." *Id.* at 332; *Am. Tax Funding* at ¶ 28. A defendant may then "bring

in independent evidence to contradict the reasonable diligence of the plaintiff's search[.]" *Brooks v. Rollins*, 9 Ohio St.3d 8, 9 (1984).

{¶ 22} Given the dictates of Civ.R. 4.4(A)(1), a plaintiff must exercise reasonable diligence in its attempt to locate a defendant's residence before it is entitled to service by publication. *Sizemore* at 331. A plaintiff exercises reasonable diligence if it "tak[es] steps which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address." *Id.* at 332; *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 25-26. Such steps may include searching telephone books or government records and contacting a credit bureau or former neighbors. *Thompkins* at ¶ 26; *Sizemore* at 332. However, none of these steps is mandated; what constitutes reasonable diligence will depend on the facts and circumstances of each particular case. *Id.* at ¶ 25-26.

{¶ 23} The reasonable diligence standard protects due process rights. See *In re Foreclosure of Liens for Delinquent Taxes*, 62 Ohio St.2d 333, 336 (1980), citing *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 317, 70 S.Ct. 652 (1950). However, "due process does not require that an interested party receive actual notice [or] 'heroic efforts' to ensure the notice's delivery." *Thompkins* at ¶ 14.

{¶ 24} In the instant matter, and as noted above, the trial court concluded the Brown County Treasurer's actions were reasonable and that due diligence was exercised in the attempt to discover and serve Wanda's heirs. This was based upon McMullen's testimony that she, on behalf of the Brown County Treasurer, conducted a Lexis-Nexis people search, searched the Brown County Probate Court's records for an estate opened after Wanda's death, and conducted an internet search for Wanda's obituary.

{¶ 25} On appeal, Julie argues the Brown County Treasurer failed to utilize all "probable sources" available, such as the phone directory, social media, and various government department databases, and failed to take any "additional steps which an

individual of ordinary prudence would take to reasonably expect to be successful in locating" her address. Julie identifies several "additional steps" that she believes could have led to the discovery of her address, including obtaining a copy of Wanda's death certificate, searching the Hamilton County Probate Court's records, and attempting service via certified mail at the Folchi Road address.

{¶ 26} We find the Brown County Treasurer took steps that a person of ordinary prudence would take in order to ascertain an individual's address. That is, we see no abuse of discretion in the trial court's finding that the Treasurer exercised reasonable diligence in attempting to identify Wanda's unknown heirs prior to resorting to service by publication.

{¶ 27} Regarding Wanda's death certificate, Julie's counsel conceded at the hearing that he did not possess a copy of Wanda's death certificate, the certificate was not included in the record, and that he did not know who was listed as the "informant" on that certificate. Notwithstanding these facts, counsel indicated he "believe[d] obtaining a copy of the death certificate and reviewing it would have, could have, provided information" leading to the discovery of Julie's address.

{¶ 28} Aside from counsel's comments, there is nothing in the record to suggest that Wanda's death certificate would have led to the discovery of Wanda's heirs and their addresses. To contradict the reasonableness of the Treasurer's search in this regard, Julie was required to provide more than a bare assertion that an additional record exists that may have led to her identification. See *4 Quarters, L.L.C. v. Hunter*, 7th Dist. Belmont No. 20 BE 0035, 2021-Ohio-3586, ¶ 24. Specifically, without viewing a copy of Wanda's death certificate or receiving testimony regarding its contents, we cannot say that the death certificate would have pointed to the existence of an heir. Rather, it is pure speculation that one of Wanda's heirs was listed on the certificate or would have led a researcher to the

Ellman sisters' names or addresses. Accordingly, the Brown County Treasurer's failure to obtain a copy of Wanda's death certificate does not render her search unreasonable.

{¶ 29} We likewise reject Julie's argument that the Treasurer should have conducted a search of the Hamilton County Probate Court's records prior to resorting to service by publication. There is no evidence in the record that such a search would have resulted in the discovery of Wanda's heirs. Notably, the record indicates the Ellman sisters did not open an estate for Wanda in the Hamilton County Probate Court until December 7, 2018, approximately one month after the default judgment was entered in this case. Thus, even if the Brown County Treasurer had conducted a search of the Hamilton County Probate Court's records before attempting service by publication, it appears such a search would not have yielded any information regarding Wanda, her estate, or her heirs at that time.

{¶ 30} Lastly, despite knowing of the Folchi Road address, the Brown County Treasurer had no knowledge or indication that Julie or any other heir to Wanda resided at that address. At the time the Treasurer filed the complaint, the record reflects that Wanda had been deceased for more than three years and no estate had been opened in that time. Additionally, the record reflects that directing service to Wanda's Folchi Road address would have been futile as tax bills had been sent there twice a year for approximately eight years, and the Brown County Treasurer received neither updated information regarding the Hamersville property nor real estate tax payments. The Treasurer was also unable to locate any obituary for Wanda, despite the extended period of time between her passing and the date of the Treasurer's complaint. Based upon these circumstances, we find the Brown County Treasurer had no obligation to attempt service upon the Ellman sisters at the Folchi Road address prior to seeking service by publication.

{¶ 31} We note that other Ohio appellate courts have rejected similar arguments on appeal. See, e.g., *Third Fed. Savings & Loan Assn. v. Taylor*, 10th Dist. Franklin No. 17AP-

254, 2017-Ohio-7620, ¶ 16-19; *Corrao*, 2020-Ohio-2822 at ¶ 4-5; *4 Quarters LLC*, 2021-Ohio-3586 at ¶ 8, 29-32. For example, the Eighth District recently rejected a defendant's claim that the plaintiff should have made additional efforts to perfect service, including a Google search and a BMV check, before resorting to service by publication. *Corrao* at ¶ 22. In so doing, the court noted that "there was nothing to indicate that such searches would not have been futile and that it was appellant's duty to set forth factual material that on its face supported his argument." *Id.* Thus, because the defendant "failed to present sufficient independent evidence to contradict the plaintiff's exercise of reasonable diligence[,]" the appellate court concurred that reasonable diligence was exercised. *Id.*

{¶ 32} We are faced with a similar situation in this case and likewise find no merit to Julie's claim that additional action by the Treasurer would have resulted in the discovery of her identity. As in *Corrao*, there is nothing within our record to demonstrate that an heir would have been located from the additional inquiries requested by Julie, and Julie did not produce any evidence indicating her identity and whereabouts would have been discovered by the Treasurer as a result of her proposed methods. Additionally, given the circumstances presented in this case, including the length of time between Wanda's passing and the Treasurer's complaint, as well as the lack of an obituary and lack of response to mail directed at the Folchi Road address, we conclude the steps taken by the Brown County Treasurer in this case were reasonable. While some of the additional inquiries suggested by Julie may constitute a part of a reasonably diligent search, they are not a mandatory prerequisite to establishing reasonable diligence for service by publication. See *Thompkins*, 2007-Ohio-5238 at ¶ 26.

{¶ 33} Consequently, we find the trial court did not abuse its discretion in concluding the Brown County Treasurer properly served Wanda's unknown heirs, i.e., the Ellman

sisters, pursuant to Civ.R. 4.4(A)(1).  The trial court, therefore, did not err in denying the Ellman sisters' motion to vacate the default judgment.

{¶ 34} For the foregoing reasons, we overrule Julie's sole assignment of error and affirm the decision of the Brown County Court of Common Pleas.

{¶ 35}  Judgment affirmed.


PIPER, P.J., and BYRNE, J., concur.