[Cite as *Lawless v. Henderson*, 2025-Ohio-588.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| WILLIAM JASON LAWLESS, | : | CASE NO. CA2024-07-018 |
| Appellee, | : | |
| | : | O P I N I O N<br>2/24/2025 |
| - vs - | : | |
| | : | |
| CODY RYAN HENDERSON, | : | |
| Appellant. | : | |


CIVIL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CVH 20240165


Freeman, Mathis & Gary LLP, and Paul-Michael La Fayette, Ashley B. Hetzel, and Zachary T. Weigel, for appellee.

Cody Ryan Henderson, pro se.


**POWELL, J.**

{¶ 1} Cory Ryan Henderson appeals the decision of the Fayette County Court of Common Pleas denying his motion for a new trial after the court granted a civil protection order ("CPO") in favor of William Jason Lawless. For the reasons stated below, we affirm the decision of the trial court.

{¶ 2}  On May 8, 2024, Lawless, the police chief for the Village of New Holland in Pickaway County, Ohio, filed a petition for a CPO against Henderson in the Fayette County Common Pleas Court.  The trial court granted an ex parte CPO in Lawless' favor the same day.  A full hearing on the petition was scheduled for May 15, 2024.  However, the hearing was continued as Henderson had not been served with notice.

{¶ 3}  On May 21, 2024, Henderson appeared in the Circleville Municipal Court for another case when a Pickaway County deputy sheriff and other officers approached Henderson to serve him with the petition and ex parte CPO.  Police body camera footage submitted by Henderson shows Henderson repeatedly attempt to walk away from the officers as the papers were presented to him.[1]  Henderson can also be seen placing his fingers in his ears in an apparent attempt to not listen to the sheriff and officers.  After the confrontation escalated, Henderson was placed into handcuffs and into a police vehicle. The sheriff subsequently filed a return of service for the petition and CPO with the court.

{¶ 4}  On June 4, 2024 a notice setting the full CPO hearing for June 17, 2024 was mailed to Henderson.  Henderson did not appear for the hearing.  After the hearing had ended, Henderson called and spoke with a court clerk, advising the clerk he was running late.  Henderson confirms this phone call occurred in his appellate briefing.

{¶ 5}  The trial court subsequently issued a CPO in Lawless' favor, and Henderson filed a motion for a new trial under Civ.R. 59 the next day.  By judgment entry, the trial court denied Henderson's motion for a new trial, finding Henderson was properly served despite attempting to "thwart" service from the sheriff and was aware of the hearing as shown by his call to the court on the day of the hearing.  Henderson now appeals that judgment entry.

---

1. The footage submitted to the court did not have audio.

**{¶ 6}** FIRST ASSIGNMENT OF ERROR. THE TRIAL COURT ERRED BY ACTING WITH ABUSE OF DISCRETION, PARTIALITY, AND PREJUDICE.

**{¶ 7}** Henderson argues that he was not properly served with the ex parte CPO on May 21, 2024 because he declined to "contract" with the sheriff and refused service.[2] Henderson asserts he did not have notice of the proceedings as a result and that it was inappropriate for the trial court to consider his phone call to the court clerk when denying his motion for a new trial. Finally, Henderson argues that the trial court exhibited partiality and prejudice in denying his motion because "the [S]tate . . . has a vested interest in thwarting" a lawsuit he filed against law enforcement in federal court.

**{¶ 8}** "It is well-established that it is the substance of a motion, not the caption, that determines the nature of a motion." *Patrick v. Ellman*, 2021-Ohio-4354, ¶ 18 (12th). Here, Henderson's motion for a new trial questioned, among other things, whether he was properly served. Therefore, he does not need to meet any specific requirement under Civ.R. 59 (new trials and other post-trial motions) as a trial court's ability to vacate a void judgment due to lack of service arises "from an inherent power possessed by the courts in this state." *Id.* at ¶ 19 (12th Dist.). We review a trial court's findings regarding proper service for an abuse of discretion. *Sears v. Sears*, 2022-Ohio-2898, ¶ 15 (4th Dist.). An abuse of discretion implies the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶ 9}** Pursuant to Civ.R. 65.1(C)(2), initial service of the petition and an ex parte CPO must be in accordance with Civ.R. 4.1 which authorizes several methods of perfecting service, including personal service. Once personal service is made, "the

---

2. Henderson also appears to claim in the statement of facts in his appellate briefing that he was not served with the notice of the June 17, 2024 CPO hearing. However, Henderson's motion for a new trial and his appellate brief deal exclusively with his argument that the petition and ex parte CPO were not served upon him. As a result, we will limit our review to whether the petition and order were appropriately served.

- 3 -

person serving process shall endorse that fact on the process and return it to the clerk, who shall make the appropriate entry on the appearance docket." Ohio Civ. R. 4.1(B)(2)(a). When service is accomplished in accordance with Civ.R. 4.1, "a rebuttable presumption of proper service arises." *Hunt v. Arboretum Home Owners Assn.*, 2020-Ohio-4947, ¶ 15 (12th Dist.).

{¶ 10} Here, the Pickaway County Sheriff Office's return of service facially complies with Civ.R. 4.1. As a result, there is a presumption that Henderson was properly served with the petition and ex parte CPO. Put simply, he has failed to rebut this presumption. Henderson's argument that he did not "contract" with the sheriff appears to refer to his efforts to evade and otherwise not listen to the sheriff serving him before Henderson was taken into custody. However, we are unconvinced, as was the trial court, that such efforts stymied proper service in this case. "Where the evidence demonstrates that a party has deliberately avoided service of process, that party should be deemed to have been constructively served . . . at the time that he began evading service of process." *B-Dry Sys., Inc. v. Kronenthal*, 1999 WL 961248, *8 (2nd Dist. Jun. 30, 1999). *See also Nicholas v. Deal*, 2003-Ohio-7212, ¶ 15 (12th Dist.).

{¶ 11} We recognize that *B-Dry Sys., Inc.*'s holding was stated to apply "at least for purposes of the jurisdictional priority rule," but we see no reason to not apply it here as well. Due process requires "notice and an opportunity to be heard." *In re Thompkins*, 2007-Ohio-5238, ¶ 13. To that end, a party must pursue service with reasonable diligence, but "due process does not require that an interested party receive *actual* notice . . . [or that] heroic efforts [are taken] to ensure the notice's delivery" (Cleaned up.) *Id.* at ¶ 14-16. Service of the petition and CPO by the sheriff under these circumstances was clearly reasonable, and Henderson's efforts to sidestep law enforcement and literally put his fingers in his ears to avoid being notified of the proceedings against him should not

be rewarded. To allow such behavior "would undermine the integrity of the judicial process, and defeat the fair and efficient administration of justice." *B-Dry Sys., Inc.* at *8.

**{¶ 12}** As a result, we conclude the trial court did not abuse its discretion in determining that Henderson was served with the petition and CPO and that his actions were a blatant attempt to avoid service of process. *See Nicholas* at ¶ 15.

**{¶ 13}** We also find that even if we were to assume the trial judge improperly considered Henderson's phone call to the court on June 17, 2024 when determining Henderson had notice of the proceedings against him, such error would be harmless because Henderson has judicially admitted in his brief to having made the call. *Buchanan v. Middletown,* 1987 WL 16062, *4, fn. 1 (12th Dist. Aug. 24, 1987), citing *State v. Conley*, 1984 WL 8041, * 1 (3rd Dist. Jul. 6, 1984). Such a call can only be interpreted as Henderson knowing of the hearing that day but failing to appear and defend against the issuance of a CPO.

**{¶ 14}** Finally, Henderson's bald assertion that the trial court's decision was an attempt to "thwart" his federal lawsuit is conclusory and unsupported by any legal arguments or evidence. We have long held that "[i]t is not the duty of an appellate court to search [caselaw or] the record for evidence to support an appellant's argument as to any alleged error." *State v. Watson*, 126 Ohio App.3d 316, 321 (12th Dist.1998).

**{¶ 15}** Henderson's first assignment of error is overruled.

**{¶ 16}** SECOND ASSIGNMENT OF ERROR. TRIAL COURT ERRED BY RULING CONTRARY TO THE LAW.

**{¶ 17}** Next, Henderson argues that because he was not properly served with the CPO petition, the trial court lacked personal jurisdiction to issue a CPO against him. Henderson also argues he was denied due process when the court's decision relied, at least in part, on his telephone call to the court concerning his attendance (or lack thereof)

at the full CPO hearing.  This assignment of error is moot as a result of our resolution to the first assignment of error.  Ohio App. R. 12(A)(1)(c).

Judgment affirmed.

HENDRICKSON , P.J., and BYRNE, J., concur.